# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
January 6, 2016 Session

## KATHRYN E. MITCHELL, ET AL. V. CHARLES WESLEY MORRIS, ET AL.

### Appeal from the Circuit Court for Washington County
No. 32184    Hon. Jean A. Stanley, Judge

### No. E2015-01353-COA-R3-CV-FILED-MARCH 9, 2016

This action concerns the decedent's purchase of several investment products from the defendants. Following the decedent's death, his daughter filed suit, alleging violations of the Tennessee Consumer Protection Act, codified at 47-18-101, et. seq., breach of contract, promissory fraud, negligent misrepresentation, and breach of fiduciary duty. The defendants sought summary judgment. The court granted summary judgment, finding that the Tennessee Consumer Protection Act claims were untimely and that the evidence was insufficient to establish the other claims without consideration of parol evidence and inadmissible hearsay testimony. The daughter appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II, J., joined and D. MICHAEL SWINEY, C.J. concurred with separate concurring opinion.

Gary L. Henry, Chattanooga, Tennessee, and Eric S. Ratliff, Sevierville, Tennessee, for the appellants, Kathryn E. Mitchell, individually and as executrix of the Estate of Alvin Ronald Morgan, and Jobe Cemetery Perpetual Care Corporation.

Clarence Risin, Nashville, Tennessee, for the appellee, New York Life Insurance and Annuity Corporation.

Janet Strevel Hayes, Knoxville, Tennessee, and Bradford D. Telfeyan, Nashville, Tennessee, for the appellees, Charles Wesley Morris and the Morris Financial Network, LLC.

## OPINION

## I.    BACKGROUND

Prior to his death, Alvin Ronald Morgan ("Decedent"), individually and as owner of Jobe Cemetery Perpetual Care Corporation ("Jobe"), purchased investment products from Charles Wesley Morris d/b/a The Morris Financial Network, LLC ("MFN") through New York Life Insurance and Annuity Corporation ("New York Life") (collectively "Defendants"). Decedent purchased the following products for his benefit:

| Policy Date | Decedent's Age | Term | Amount |
|---|---|---|---|
| 12/3/2007 | 84 | 8 years | $100,000 |
| 4/10/2008 | 85 | 9 years | $100,000 |
| 6/9/2008 | 85 | 9 years | $100,000 |
| 6/10/2010 | 87 | 10 years | $50,000 |
| 8/31/2010 | 87 | 11 years | $25,000 |
| 3/2/2011 | 88 | 11 years | $20,000 |
| 7/6/2011 | 88 | 11 years | $20,000 |
| | | | |
| | **Total** | | $415,000 |

At some point, Decedent, acting on behalf of Jobe, purchased an additional $175,000 in investment products from Defendants. Each of the products operated as a guaranteed income annuity, entitling Decedent and Jobe, where applicable, to quarterly payments comprised of a portion of principal and interest. Decedent named Kathryn E. Mitchell ("Daughter") as the beneficiary for each product in the event of his death. Upon his death, Daughter was entitled to receive either the quarterly payments until the expiration of the term or a one-time lump sum payment. Decedent died on March 31, 2013.

On September 11, 2013, Daughter, individually and as executrix of the Estate of Alvin Ronald Morgan and on behalf of Jobe (collectively "Plaintiffs"), filed suit against Defendants, alleging that they had violated the Tennessee Consumer Protection Act ("TCPA") and breached their contract with Decedent. Plaintiffs also alleged that Defendants were liable for promissory fraud, negligent misrepresentation, and breach of fiduciary duty. They claimed that Mr. Morris erroneously advised Decedent to purchase the products when the investments were contrary to Decedent's objectives, namely to maximize income while preserving the principal. They alleged that Decedent also sought to withdraw the principal as needed but that any withdrawal of the principal was subject to a penalty. They claimed that Mr. Morris should have advised Decedent to invest in

more suitable products. In addition, they claimed that the death benefit, including the funds already received by Decedent, was less than the total aggregate amount initially invested in all contracts. They opined that Daughter cannot recover as the beneficiary of Jobe's investment products because the products belong to a charitable organization.

Defendants responded by denying wrongdoing and asserting that Plaintiffs had failed to state a claim upon which relief could be granted. Discovery ensued, and Daughter and Mr. Morris were deposed. Daughter, a retired small business owner, recalled that Decedent provided her with his power of attorney on August 10, 2009. She acknowledged first learning of the investment products in 2010 or 2011 when Decedent told her that Mr. Morris offered him a 12 percent rate of return. She noted that others, Virginia L. Hilton, Major General Joe P. Morgan, and Tommy Phillips, told her that Decedent told them that Mr. Morris offered him a 12 percent rate of return and would provide the same for others. She was skeptical of Decedent's claim but stated that she did not question him because he was a "very savvy" and "very intelligent man." She believed that he purchased the annuities using funds from various certificate of deposits and that he also saved his quarterly payments to later purchase additional annuities.

Daughter testified that she suspected a problem when she reviewed a quarterly statement and discovered that the investments were not growing. She first contacted Mr. Morris, who initially provided her with additional quarterly statements and assisted her in setting up a direct deposit to collect the annuity payments for Decedent. She claimed that Mr. Morris refused her further attempts at communication. Thereafter, she took the quarterly statements to her certified public accountant for inspection in April 2011. She provided that her accountant advised her to "look into" the matter. She contacted an attorney and ultimately discovered, through communication with a Wells Fargo representative, that Decedent's quarterly payments were comprised of interest and principal, thereby confirming her speculation that Decedent had not received a 12 percent rate of return. She acknowledged that she never told Decedent that his investments were not performing as he believed because she did not want to embarrass him. She claimed that Decedent would not have purchased the products if he had realized his quarterly payments included a portion of the principal.

Relative to Jobe, Daughter testified that her family served as caretakers for the local cemetery and raised funds to pay for the upkeep. She noted that Decedent later founded Jobe to formalize the arrangement and organize those involved. He used his own money to purchase annuities for Jobe and designated her as the beneficiary. However, Decedent never advised her that he was offered a 12 percent rate of return for the annuities he purchased for Jobe.

Daughter acknowledged that she sought approximately $415,000 in compensatory damages. She agreed that Decedent had received annuity payments for a number of years and that she had also received his death benefit in a lump sum payment of approximately $200,000 following his passing. When asked why she essentially sought to recover what she and Decedent had already received, she explained that Defendants should be held liable for their misrepresentations. She acknowledged that Defendants complied with the terms of the written contracts, that Decedent received payment in accordance with the terms of the contracts, and that the contracts did not specifically provide that Decedent was entitled to receive a 12 percent rate of return.

Mr. Morris testified that he was a licensed insurance agent and that he also held a security license, which allowed him to sell mutual funds and variable contracts. He established his company and began working for New York Life as an agent in 2002. He was allowed to market products other than just those offered by New York Life. However, he received a deferred compensation plan and a profit-sharing plan from New York Life. He noted that New York Life did not subsidize his office expenses or remit payment for his support staff.

Mr. Morris testified that he first met Decedent as a child in Sunday school. He recalled that Decedent contacted him and scheduled an appointment in 2007 to discuss investment options. Decedent sought to increase cash flow and income from a reputable company without the risk of losing value in his investment. He explained that Decedent was not interested in mutual funds, bonds, or variable annuities due to the risk of loss. He provided that Decedent's aversion to risk was understandable given Decedent's age.

Mr. Morris testified that he recommended a fixed interest annuity or a guaranteed income annuity based upon Decedent's representations. Decedent chose to purchase a guaranteed income annuity, which guaranteed that "income would be produced for the life of the annuitant or paid out to the beneficiaries." Decedent received quarterly payments comprised of principal and interest. He noted that only the income produced from the investment was taxable. He identified a 2011 1099 form in which it was reflected that only $2,665.96 of Decedent's gross distribution of $12,516.16 was taxable, meaning that approximately $9,850 of Decedent's distribution was comprised of the return of the principal.

Mr. Morris claimed that Decedent referred several clients to him and often told others to invest with him. He sold approximately nine guaranteed income annuities to Decedent. He provided that Decedent approached him to purchase each product and that he provided Decedent with the same forms and options prior to completing the purchase. He recalled advising Decedent of the right to reject the product or discuss his decision with Daughter. He denied that Decedent ever asked him about a 12 percent rate of return

or that he ever offered Decedent a 12 percent rate of return. He provided that Decedent never expressed confusion about the terms of the contracts or asked for additional information. He noted that it was common for his clients to purchase several annuities but agreed that he would not advise the use of income produced from annuities to purchase additional annuities. He claimed that investing in that manner would have been inconsistent with Decedent's objectives and contrary to his belief that Decedent was "a sharp individual" who was capable of managing his own affairs.

Mr. Morris recalled that Decedent also purchased a few annuities on behalf of Jobe. Decedent refused to disclose the amount of Jobe's assets, but Mr. Morris was able to review Jobe's articles of incorporation before proceeding with the purchase. He recalled that Decedent mentioned ownership of an Individual Retirement Account ("IRA"). He claimed that Decedent refused to disclose any documentation of the IRA and rejected his advice to purchase annuities using funds from his required IRA distribution. Decedent later asked for advice concerning the purchase of an individual stock. However, Decedent never purchased individual stock from him.

Mr. Morris acknowledged that he received approximately $14,000 in compensation from New York Life as a result of Decedent's investments. He asserted that Daughter never contacted him about the suitability of Decedent's purchases. He recalled that she came to his office to provide him with a copy of the document establishing her authority as Decedent's power of attorney and that he later met with her and her fiancé, Mr. Phillips, for lunch to discuss the particulars of a life insurance application in September 2011.[1]

In May 2015, Defendants filed motions for summary judgment. They claimed that the TCPA claim was barred by the applicable one-year statute of limitations and that the evidence was insufficient to establish a breach of contract claim when Daughter agreed that Defendants complied with the terms of the annuity contracts and could not produce admissible evidence of a separate contract or term providing a 12 percent rate of return. They also claimed that the evidence was insufficient to establish the remaining tort claims when Plaintiffs had "no actual knowledge of the representations Mr. Morris may or may not have made regarding the annuities beyond inadmissible hearsay."

As pertinent to this appeal, Plaintiffs responded by asserting that genuine issues of material fact remained concerning whether their TCPA claim was barred when the complaint was filed within one year of Decedent's passing. They claimed that Decedent was the only person with the authority to file suit. They further claimed that genuine issues of material fact remained concerning their breach of contract and tort claims. They

---

[1] Daughter denied meeting with Mr. Morris. However, she acknowledged that Mr. Phillips sought life insurance through Mr. Morris and that his application was denied.

asserted that Decedent's statement that Mr. Morris offered him a 12 percent rate of return was not hearsay because it was not offered for the truth of the matter asserted, namely that the annuities actually generated a 12 percent rate of return. They claim that the testimony was offered to prove that Mr. Morris offered a 12 percent rate of return, an operative fact of independent legal significance.

> Following a hearing on the motion for summary judgment, the court stated,
>
> As far as the issue of the statute of limitations under the [TCPA], it's pretty clear to this [c]ourt that cause of action would have arisen when [Daughter] talked to [the Wells Fargo representative]. That was in 2011. The case was not filed until 2013. That was after the statute expired.
>
> As to the breach of contract, it's also clear to the [c]ourt that the oral terms that [Plaintiffs] want to bring into this case absolutely [contradict] the written contract in this case. So the motion for summary judgment is granted. First of all as to the [TCPA] and as to the breach of contract.
>
> It gets a little more interesting when we talk about the other three actions, the promissory fraud, negligent misrepresentation and the breach of fiduciary duty. The bottom line of that is every bit of that comes back to what [Decedent] says that [Mr. Morris] told him and that was told to [Daughter]. It's hearsay. I just can't figure out another way to look at it. I really can't.
>
> So because of that I do not think you can prove your case and I'm going to grant the motion for summary judgment on all counts. Tax costs to [Plaintiffs].

Thereafter, the court entered an order in which it granted summary judgment by stating, in pertinent part, as follows:

> Having considered the record as a whole, including the motions, briefs, and exhibits, and upon the appearance of counsel for Plaintiffs and [Defendants], the [c]ourt finds that there is no genuine issue as to any material fact and [that] Defendants are entitled to judgment as a matter of law pursuant to [Rule 56 of the Tennessee Rules of Civil Procedure].

The court did not reference the transcript in its order. This timely appeal followed.

## II.    ISSUES

We consolidate and restate the issues raised on appeal as follows:

A.     Whether the trial court's failure to state the legal grounds supporting the grant of summary judgment requires this court to vacate the order and remand the case for reconsideration in compliance with Rule 56.04 of the Tennessee Rules of Civil Procedure.

B.     Whether the trial court erred in granting summary judgment.

## III.    STANDARD OF REVIEW

This action was initiated in September 2013; therefore, the dispositive summary judgment motion is governed by Tennessee Code Annotated section 20-16-101, which provides,

> In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:
>
> > (1)     Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or
> >
> > (2)     Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101.

"We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness." *Rye v. Women's Care Center of Memphis, MPLLC*, -- S.W.3d --, 2015 WL 6457768, at *12 (Tenn. Oct. 26, 2015) (citations omitted). "In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* (citations omitted). We must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox Cnty. Bd of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

## IV. DISCUSSION

### A.

As a threshold issue, Plaintiffs ask this court to vacate the grant of summary judgment and remand this case for reconsideration because the order appealed from did not contain the legal grounds supporting the grant of summary judgment. Rule 56.04 of the Tennessee Rules of Civil Procedure provides, in pertinent part,

> The trial court shall state the legal grounds upon which the court denies or grants the motion, which shall be included in the order reflecting the court's ruling.

Our Supreme Court has instructed that trial courts must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014). Defendants respond that Plaintiffs ratified the order and did not take issue with its completeness at the trial level. They further assert that remand is unnecessary when the legal grounds were stated at the hearing and when the decision was the product of the court's independent judgment.

Here, the trial court discussed the legal grounds in support of its decision following the hearing and then relied upon counsel to draft the order. The order drafted by counsel did not contain the court's stated legal grounds or incorporate the transcript from the hearing. In such cases, our Supreme Court offered the following guidance,

> The changes to Tenn. R. Civ. P. 56.04 were intended to address two concerns. First, they reflect the growing awareness of both the Advisory Commission and this Court that explanations of the basis for judicial decisions promote respect for and acceptance of not only the particular decision but also for the legal system. Second, skeletal orders containing no explanation of the reasons for granting the summary judgment were complicating the ability of the appellate courts to review the trial court's decision. *See, e.g., Church v. Perales*, 39 S.W.3d 149, 157 (Tenn. Ct. App. 2000) (noting that skeletal orders lacking a statement of grounds required appellate courts to "perform the equivalent of an archeological dig [to] endeavor to reconstruct the probable basis for the [trial] court's decision") (quoting *Camilo-Robles v. Hoyos*, 151 F.3d 1, 8 (1st Cir. 1998)).

Despite the amendments to Tenn. R. Civ. P. 56.04 making the statement of grounds mandatory, the Court of Appeals has been reticent to vacate summary judgment orders that plainly do not comply with Tenn. R. Civ. P. 56.04 and to remand them to the trial court for further consideration. The court continues to conduct archeological digs and to review summary judgment orders when the basis for the trial court's decision can be readily gleaned from the record and to remand the case only when their practiced eyes cannot discern the grounds for the trial court's decision.

We readily agree that judicial economy supports the Court of Appeals' approach to the enforcement of Tenn. R. Civ. P. 56.04 in proper circumstances when the absence of stated grounds in the trial court's order does not significantly hamper the review of the trial court's decision. However, in the future, the resolution of issues relating to a trial court's compliance or lack of compliance with Tenn. R. Civ. P. 56.04 should also take into consideration the fundamental importance of assuring that a trial court's decision either to grant or deny a summary judgment is adequately explained and is the product of the trial court's independent judgment.

*Id.* at 313-14 (internal footnotes omitted).

The absence of stated grounds in the order at issue does not hamper our review when the grounds were included and adequately explained in the transcript of the hearing. The record also reflects that the decision was the product of the court's independent judgment. Accordingly, we deny Plaintiffs' request to vacate the order and remand the case for reconsideration.

## B.

### *TCPA*

Plaintiffs assert that the trial court erred in granting summary judgment on their TCPA claim based upon the applicable statute of limitations. They argue that genuine issues of material fact remain regarding when the cause of action accrued. Defendants respond that the court did not err when Daughter had the authority to sue on Decedent's behalf, yet failed to file suit within one year of her discovery of a potential claim.

The TCPA provides, in pertinent part, as follows:

Any person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value

wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-18-104(b) and declared to be unlawful by this part, may bring an action individually to recover actual damages.

Tenn. Code Ann. § 47-18-109(a)(1).  The TCPA further provides:

Any action commenced pursuant to § 47-18-109 shall be brought within one (1) year from a person's discovery of the unlawful act or practice, but in no event shall an action under § 47-18-109 be brought more than five (5) years after the date of the consumer transaction giving rise to the claim for relief.

Tenn. Code Ann. § 47-18-101.

Daughter was provided with Decedent's power of attorney on August 10, 2009. The document supporting her appointment contained the following pertinent provisions:

Powers:  I authorize my attorney for me and on my behalf to do each of the following things:

* * *

Litigation.  To sue, defend or compromise suits and legal actions and to employ counsel in connection with the same.

* * *

Investments.  To invest or reinvest each item of money or other property, without being restricted to those authorized or prescribed by present or future law.  Principles of diversification need not be observed.

Plaintiffs do not dispute the fact that Daughter possessed knowledge of a potential claim in April 2011, yet failed to file suit within one year.  Citing *Childress v. Currie*, 74 S.W.3d 324, 329 (Tenn. 2002), they argue that the cause of action did not accrue until Decedent's passing because Daughter was incapable of filing suit on his behalf.  They note that Daughter never exercised the power of attorney and further claim that the "existence of a power of attorney does not convert an agent into a person capable of suing on behalf of the principal without some exercise of power by the agent under the power of attorney."  In other words, they claim that Daughter could not sue on Decedent's behalf because she had not yet exercised her authority as power of attorney.  This

argument is circuitous and unsupported by the Court's decision in *Childress*. In *Childress*, the Court considered whether an unexercised power of attorney creates a confidential relationship between the parties for purposes of establishing a claim of undue influence in a will contest. 74 S.W.3d at 328-29. In holding that more proof was required, the Court acknowledged that "[t]he core definition of a confidential relationship requires proof of dominion and control." *Id.* at 329.

The fact remains that Daughter held the authority to either sue on Decedent's behalf or reinvest his funds when she learned of the potential for impropriety in Decedent's investments. Daughter simply refused to take action in an effort to protect her father from embarrassment. While we are sympathetic with Daughter's plight, we affirm the court's grant of summary judgment on the TCPA claim because Daughter possessed knowledge of a potential claim in April 2011, yet failed to file suit within one year pursuant to Tennessee Code Annotated section 47-18-101.

*Breach of contract*

In order to prevail in a breach of contract case, a plaintiff must prove "the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." *Federal Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011) (citation omitted). The cardinal rule of contract interpretation is that the court must attempt to ascertain and give effect to the intention of the parties. *Christenberry v. Tipton*, 160 S.W.3d 487, 494 (Tenn. 2005). In attempting to ascertain the intent of the parties, the court must examine the language of the contract, giving each word its usual, natural, and ordinary meaning. *Wilson v. Moore*, 929 S.W.2d 367, 373 (Tenn. Ct. App. 1996). The court's initial task in construing the contract is to determine whether the language is ambiguous. *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 889-90 (Tenn. 2002). In general terms, an ambiguity occurs where a word or phrase is capable of more than one meaning. *Campora v. Ford,* 1124 S.W.3d 624, 629 (Tenn. Ct. App. 2003) (citing *Walk-in Med. Ctrs., Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir. 1987)).

Plaintiffs argue that the court erred in granting summary judgment when genuine issues of material fact remained concerning whether Decedent and Mr. Morris entered into an oral contract for a 12 percent rate of return on the investments. In the alternative, they claim that genuine issues of material fact remained concerning whether Decedent and Mr. Morris modified the standard-form annuity contracts to incorporate a 12 percent rate of return on the investments. Plaintiffs offered Decedent's statement that Mr. Morris offered him a 12 percent rate of return as evidence in support of both theories. Plaintiffs assert that Decedent's statement was improperly excluded as inadmissible hearsay when they did not offer the testimony to prove the truth of the matter asserted, namely that the

annuities generated a 12 percent rate of return. They claim that the testimony was offered to prove that Mr. Morris offered a 12 percent rate of return, an operative fact of independent legal significance. Defendants concede that Mr. Morris's statement to Decedent was not hearsay. However, they assert that Decedent's statement repeating Mr. Morris's offer was properly excluded by the trial court as inadmissible hearsay.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Hearsay is inadmissible in trial court proceedings unless it falls within one of the recognized exceptions to the hearsay rule. Tenn. R. Evid. 802; *Mitchell v. Archibald*, 971 S.W.2d 25, 28 (Tenn. Ct. App. 1998). "Hearsay within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules or otherwise by law." Tenn. R. Evid. 805.

The testimony at issue is comprised of two statements. The first statement is Mr. Morris's offer to provide a 12 percent rate of return to Decedent. The second statement is Decedent's statement that Mr. Morris offered him a 12 percent rate of return. We agree that Mr. Morris's offer to provide a 12 percent rate of return to Decedent was not an inadmissible hearsay statement because it was not offered to prove the truth of the matter asserted, namely that the annuities would actually generate a 12 percent rate of return. Rather, the statement was submitted to prove that the offer was made. However, this statement may only be introduced through Daughter or the various other witnesses Decedent told about Mr. Morris's offer. While Mr. Morris's statement to Decedent was not hearsay, Decedent's statements to others were properly classified and excluded as inadmissible hearsay testimony because these statements were offered to prove the truth of the matter asserted, namely that Mr. Morris offered Decedent a 12 percent rate of return. Without this testimony, Plaintiffs cannot establish the existence of a separate oral contract or an additional term to the existing contract.

Additionally, the parol evidence rule would prevent Plaintiffs from contradicting the terms of the contract by seeking the admission of "extrinsic" evidence, namely Mr. Morris's offer of a 12 percent rate of return and Decedent's statements to others that he was offered a 12 percent rate of return. *See, e.g., Maddox v. Webb Constr. Co.*, 562 S.W.2d 198, 201 (Tenn. 1978); *Airline Constr., Inc. v. Barr*, 807 S.W.2d 247, 259 (Tenn. Ct. App. 1990). Ordinarily, parol evidence is inadmissible to add to, vary, or contradict contract language. *Stickley v. Carmichael*, 850 S.W.2d 127, 132 (Tenn. 1992). There are a number of exceptions to the parol evidence rule. In this state, extrinsic evidence can be admitted for the following purposes: (a) to aid in the interpretation of existing terms or to explain, rather than contradict, the terms of a document, *see Burlison v. United States*, 533 F.3d 419, 429-430 (6th Cir.2008); *Richland Country Club, Inc. v. CRC Equities, Inc.*,

832 S.W.2d 554, 558 (Tenn. Ct. App. 1991); (b) to resolve a latent ambiguity in the contract, *Coble Systems, Inc. v. Gifford Co.*, 627 S.W.2d 359 (Tenn. Ct. App. 1981); or (c) to establish allegations of fraud or fraudulent misrepresentation in the inducement of a contract. *See Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 588 (Tenn. Ct. App. 1980); *see also Hines v. Wilcox*, 33 S.W. 914, 915-16 (Tenn. 1896) (listing several other exceptions to the parol evidence rule).

Plaintiffs first claim that the evidence was not offered to contradict the terms of the contracts when the contracts did not specifically provide the rate of return for the annuities. This argument is disingenuous. An additional term providing a specific rate of return would necessarily add to, vary, or contradict the terms of the existing contracts. Plaintiffs next argue that parol evidence may be considered in support of allegations of fraud. While true, this argument is unavailing in support of a breach of contract claim. *See Brungard*, 608 S.W.2d at 588 (providing that the parol evidence rule applies to breach of contract actions, not suits for fraudulent misrepresentation in the inducement of a contract). With the above considerations in mind, we conclude that the trial court did not err in granting summary judgment on the breach of contract claim.

*Promissory fraud*

Under Tennessee law, in order to prevail on a claim based on fraud, a plaintiff must show the following: (1) an intentional misrepresentation with regard to a material fact; (2) knowledge of the representation's falsity (i.e., it was made "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity); (3) the plaintiff reasonably relied on the misrepresentation and suffered damage; and (4) the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, the misrepresentation "must embody a promise of future action without the present intention to carry out the promise." *Shahrdar v. Global Housing, Inc.,* 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998) (citing *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)).

Plaintiffs identified Mr. Morris's offer of a 12 percent rate of return as the intentional misrepresentation at issue. Having concluded that Decedent's statement that Mr. Morris offered him a 12 percent rate of return was properly excluded as inadmissible hearsay testimony, we likewise conclude that the court did not err in granting summary judgment on the promissory fraud claim.

## Negligent misrepresentation

Persons asserting a negligent misrepresentation claim must establish:

One, who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies *false information* for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the *information* if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1) (1977) (emphasis added); *Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997). An essential requirement for a claim of negligent misrepresentation is "detrimental reliance on a false premise." *McNeil v. Nofal*, 185 S.W.3d 402, 408 (Tenn. Ct. App. 2005) (supporting citations omitted).

Plaintiffs identified Mr. Morris's offer of a 12 percent rate of return as the false information at issue. Having concluded that Decedent's statement that Mr. Morris offered him a 12 percent rate of return was properly excluded as inadmissible hearsay testimony, we likewise conclude that the court did not err in granting summary judgment on the negligent misrepresentation claim.

## Breach of fiduciary duty

"In order to recover for breach of fiduciary duty, a plaintiff must establish: (1) a fiduciary relationship, (2) breach of the resulting fiduciary duty, and (3) injury to the plaintiff or benefit to the defendant as a result of that breach." *Ann Taylor Realtors, Inc. v. Sporup*, No. W2010-00188-COAR3CV, 2010 WL 4939967, at *3 (Tenn. Ct. App. Dec. 3, 2010) (citing 37 C.J.S. *Fraud* § 15 (2008)). Here, Plaintiffs alleged that Decedent's placement of confidence and trust in Defendants established a fiduciary relationship that allowed them to influence and exercise dominion and control over Decedent. They offered two theories in support of their claim, namely that Mr. Morris erroneously advised Decedent that he would receive a 12 percent rate of return on his investments and that Mr. Morris offered unsuitable investment advice.

On appeal, Plaintiffs first argue that the court erred in granting summary judgment when genuine issues of material fact remained regarding whether Mr. Morris erroneously advised Decedent that he would receive a 12 percent rate of return. Having concluded that Decedent's statement was properly excluded as inadmissible hearsay testimony, we further conclude that this argument is without merit.

Plaintiffs next argue that the court erred in granting summary judgment on the breach of fiduciary duty claim when genuine issues of material fact remained regarding whether Mr. Morris, acting on behalf of MFN and under the authority of New York Life, offered unsuitable investment advice for Decedent's needs. They claim that Defendants did not address this theory in their motion for summary judgment and that the trial court did not rule on the issue. Defendants respond that review of the issue is waived when Plaintiffs made no effort in the pleadings or at the hearing to demonstrate any issue of fact concerning the suitability of the investment products for Decedent.

Rule 56.06 of the Tennessee Rules of Civil Procedure provides, in pertinent part, as follows:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but his or her response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Plaintiffs argue that the motion for summary judgment was not properly supported because Defendants did not address the suitability theory. Likewise, Defendants argue that Plaintiffs failed to set forth specific facts showing that there was a genuine issue for trial by failing to raise the suitability theory in response to the motion for summary judgment. We agree with Defendants.

Defendants sought summary judgment by alleging that Plaintiffs had no "actual knowledge of the representations Mr. Morris may or may not have made regarding the annuities beyond inadmissible hearsay." They offered deposition testimony in further support of their motion. Mr. Morris testified that he considered Decedent's investment objectives and offered two options for Decedent's consideration. Mr. Morris further testified that Decedent rejected his advice on at least one occasion and refused to disclose documentation when asked. This evidence disproves any claim that Mr. Morris exercised dominion and control over Decedent. Additionally, Mr. Morris and Daughter agreed that Decedent appeared competent and capable of making investment decisions. In consideration of this evidence, we agree that the motion was properly supported and encompassed both theories. Accordingly, Plaintiffs should have responded, by affidavits or as otherwise allowed, with specific facts showing that there was a genuine issue for trial. Instead, Plaintiffs addressed their suitability theory at the hearing on the motion for summary judgment by simply stating,

Now, there was testimony by Mr. Morris that his clients, including [Decedent], come to him for investment advice. And the investments for someone his age and this many annuities, would have formed the basis of a breach of fiduciary duty claim.

Plaintiffs offered no evidence in support of this conclusory statement. Moreover, Plaintiffs failed to allege any facts in support of their assertion that Mr. Morris, acting on behalf of MFN and under the authority of New York Life, exercised dominion and control over Decedent. With these considerations in mind, we conclude that the trial court did not err in granting summary judgment on the breach of fiduciary duty claim.

## V.    CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed equally to the appellants, Kathryn E. Mitchell, individually and as executrix of the Estate of Alvin Ronald Morgan, and Jobe Cemetery Perpetual Care Corporation.

_____
JOHN W. McCLARTY, JUDGE