# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 14, 2001 Session

## BILLY JOE CHILDRESS v. NATASHA BARNES CURRIE, ET AL.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Lauderdale County**
**No. 5029      Joseph H. Walker, Judge**

---

**No. W1999-00471-SC-R11-CV** - **Filed May 3, 2002**

---

The issue presented in this case is whether a confidential relationship arises as a matter of law when an unrestricted power of attorney is executed but not exercised. The trial court held that a confidential relationship existed and that the resulting presumption of undue influence could only be rebutted by proof of independent advice to the decedent. Because there was no such proof, the trial court set aside the jury's verdict and found that the will was invalid.

On appeal, the Court of Appeals concluded that since the attorney-in-fact was unaware of the power of attorney at the time the decedent executed her will, there was not a confidential relationship between the attorney-in-fact and the decedent and, therefore, no presumption of undue influence. After a thorough review of the record and the relevant authority, we hold that a confidential relationship does not arise as a matter of law when an unrestricted power of attorney is executed without being exercised. Accordingly, the judgment of the Court of Appeals is affirmed.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed**

E. RILEY ANDERSON, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and ADOLPHO A. BIRCH, JR., JANICE M. HOLDER and WILLIAM M. BARKER, JJ., joined.

J. Thomas Caldwell, Ripley, Tennessee, for the appellant, Billy Joe Childress.

Charles W. Fowler and Adam F. Glankler, Memphis, Tennessee, for the appellee, Natasha Barnes Currie.

## OPINION

## BACKGROUND

This case involves a will contest. Virginia Mary Leonard ("the decedent") executed a will on February 16, 1994, leaving her entire estate to the appellant, Billy Joe Childress, who was a friend and former employer. On May 22, 1997, the decedent, then age 78, executed another will, leaving her entire estate to the appellee, Natasha Barnes Currie, the decedent's cousin.[1] The decedent was a widow and had no children. The evidence in the record is summarized below.

In April of 1997, Natasha Currie began living with her elderly cousin, Virginia Leonard, on a part-time basis. Currie helped her cousin care for herself and her home. By May of 1997, Currie was living with and assisting Leonard on a full-time basis while Leonard was afflicted with incontinence, insomnia, and anxiety.

On May 5, 1997, Leonard asked Currie to drive her and Elizabeth Barnes, her second cousin, to the Bank of Ripley where Leonard owned a certificate of deposit totaling approximately $8,500. While at the bank, Leonard withdrew approximately $4,400 from the certificate of deposit and placed the remainder – approximately $4,100 – in a certificate of deposit in her name and the name of Elizabeth Barnes.

Currie testified that Leonard withdrew the $4,400 to pay the deposit on a pre-arranged funeral policy, to pay property taxes for 1994, and to pay for cleaning supplies and clothing. With the exception of the $2,200 later paid as a deposit on the funeral policy, the record is silent as to the amount of any other expenses and the balance remaining from the $4,400.

On May 22, 1997, Leonard asked Currie to drive her and Elizabeth Barnes to Currie's Funeral Home so that she could purchase a pre-arranged funeral plan. As Currie and Barnes waited outside the office, the decedent purchased the plan from Frank Currie.[2] After purchasing the funeral plan, she asked Frank Currie to draft a power of attorney in favor of Natasha Currie and a will leaving her entire estate to Currie. Frank Currie, who had known Leonard for several years, testified that she acted as he had always known her to act, strong-willed. He also testified that she paid for the funeral plan herself and stated that she wanted to get her business affairs in order.

Although not an attorney, Frank Currie agreed to draft the documents. Leonard then executed both a power of attorney to Natasha Currie and a will, which stated in part as follows:

> . . . I, Virginia M. Leonard, of Lauderdale County, State of Tennessee, City of Ripley, the undersigned hereby declare and appoint Natasha Barnes Currie the right to handle any and all of my business and to live with me. At the time of my death, Natasha Barnes Currie will have all of my possessions.

---

[1] Ms. Currie is the granddaughter of Ms. Elizabeth Barnes, the decedent's second cousin.

[2] Frank Currie is the uncle of Ms. Currie's former husband.

Natasha Currie was not present when Leonard signed the documents; however, Elizabeth Barnes witnessed the decedent's execution of the will. Currie testified that she did not find out about the power of attorney and the will until after everyone had left the funeral home. On May 23, 1997, the day after the documents were executed, Ms. Currie recorded the power of attorney in the Register's Office of Lauderdale County.

Natasha Currie testified that in the early part of June 1997, Leonard asked that she withdraw the money from the joint certificate of deposit with Barnes in order to pay the balance on the decedent's funeral plan – approximately $3,200 – before she went into the hospital. Currie also closed two of the decedent's bank accounts, totaling approximately $700. When asked where the remainder of Leonard's money was spent, Currie could not recall.

The record reflects that the decedent was seen by her treating physician, Dr. Luis Wong, on April 3, 1997; May 5, 1997; and June 10, 1997. On June 10, 1997, she was admitted to Baptist Memorial Hospital in Ripley, Tennessee. The admitting diagnosis indicated that Leonard suffered from coronary artery disease, osteoarthritis, chronic organic brain disease, and chronic senile dementia. She was transferred later to the geriatric/psychiatric unit of the Baptist Memorial Hospital and treated by Dr. Louis Wells, a psychiatrist. Dr. Wells testified that Leonard was admitted to the hospital because she was very paranoid and threatened to harm herself. Dr. Wells and his staff agreed that Leonard was paranoid, with some dementia and short-term memory loss. The doctor stated that on occasion Leonard was belligerent, hostile, and very paranoid, and that he prescribed medication for her. On July 3, 1997, Leonard's condition improved, and she was transferred to a nursing home. She died on July 19th, sixteen days after entering the nursing home.

On July 31, 1997, Leonard's February 1994 will was admitted to probate in the Lauderdale County Probate Court, naming the appellant, Billy Joe Childress, as the sole beneficiary. In September of 1997, Natasha Currie filed a petition contesting the February 1994 will and offering Leonard's May 1997 will for probate, which named Currie as the sole beneficiary. Childress responded that Leonard did not have testamentary capacity to execute the May 1997 will, and that she signed the will as a result of undue influence. In November of 1997, the probate court rejected the February 1994 will and admitted Leonard's May 1997 will to probate.

At the request of both parties, the will contest was transferred to the Lauderdale County Circuit Court for a jury trial. The jury returned a verdict upholding the validity of the May 1997 will, but the trial court granted a motion for a directed verdict setting aside the jury's finding that the decedent, Leonard, had not been unduly influenced. The trial court found that there was a presumption of undue influence because there was a confidential relationship, and that Leonard had not received independent advice prior to executing her May 1997 will that would have rebutted the presumption of undue influence and shown the fairness of the transaction.

On appeal, the Court of Appeals concluded that since Currie was unaware of the power of attorney at the time Leonard executed her will, there was not a confidential relationship between Currie and Leonard. Moreover, the court concluded that since there was not a confidential

relationship present, there was no presumption of undue influence and that Currie was not required to prove the fairness of the transaction by clear and convincing evidence. We granted permission to appeal.

## STANDARD OF REVIEW

A directed verdict is appropriate in a will contest case only when the evidence in the case is susceptible to but one conclusion. See Eaton v. McLain, 891 S.W.2d 587, 590 (Tenn. 1994). An appellate court must take the strongest legitimate view of the evidence favoring the opponent of the motion when called upon to determine whether a trial court should have granted a directed verdict. Id. Furthermore, all reasonable inferences in favor of the opponent of the motion must be allowed and all evidence contrary to the opponent's position must be disregarded. Id. Ultimately, an appellate court "may grant the motion only if, after assessing the evidence according to the foregoing standards, it determines that reasonable minds could not differ as to the conclusions to be drawn from the evidence." Id. (citations omitted).

## ANALYSIS

In a will contest, a properly executed will may be challenged on a theory that the decedent's mind was not "sufficiently sound to enable him or her to know and understand the force and consequence of the act of making the will" at the time the will was executed. In re Estate of Elam, 738 S.W.2d 169, 171-72 (Tenn. 1987). As this Court has said:

> The testator must have an intelligent consciousness of the nature and effect of the act, a knowledge of the property possessed and an understanding of the disposition to be made. While evidence regarding factors such as physical weakness or disease, old age, blunt perception or failing mind and memory is admissible on the issue of testamentary capacity, it is not conclusive and the testator is not thereby rendered incompetent if her mind is sufficiently sound to enable her to know and understand what she is doing.

Id. (citations omitted).

Similarly, a will may be challenged on the basis that the decedent was subject to the undue influence of another in executing the will. In Tennessee, for example, where there is a "confidential relationship, followed by a transaction wherein the dominant party receives a benefit from the other party, a presumption of undue influence arises, that may be rebutted only by clear and convincing evidence of the fairness of the transaction." Matlock v. Simpson, 902 S.W.2d 384, 386 (Tenn. 1995) (citations omitted). A confidential relationship is any relationship which gives one person dominion and control over another. See Mitchell v. Smith, 779 S.W.2d 384, 389 (Tenn. Ct. App. 1989).

-4-

The burden of proof regarding a confidential relationship rests upon the party claiming the existence of such a relationship. See Brown v. Weik, 725 S.W.2d 938, 945 (Tenn. Ct. App. 1983). Once a confidential relationship has been shown and a presumption of undue influence arises, the burden shifts to the dominant party to rebut the presumption by proving the fairness of the transaction by clear and convincing evidence. Matlock v. Simpson, 902 S.W.2d at 386; see Gordon v. Thornton, 584 S.W.2d 655, 658 (Tenn. Ct. App. 1979). To prove the fairness of the transaction, the dominant party may show that the weaker party received independent advice before engaging in the transaction that benefitted the dominant party. See Hogan v. Cooper, 619 S.W.2d 516, 519 (Tenn. 1981); see also Richmond v. Christian, 555 S.W.2d 105, 107-08 (Tenn. 1977) (proof that the donor received independent advice respecting the consequences and advisability of the gift) (citations omitted).

This Court has held that a confidential relationship arises as a matter of law when an unrestricted power of attorney is granted to the dominant party. Matlock v. Simpson, 902 S.W.2d at 386 (citing Mitchell v. Smith, 779 S.W.2d at 389). In that case, the decedent executed an unrestricted power of attorney, which gave his attorney full authority to handle his business affairs, and a will, which left all of his property to his attorney except for a few personal items. 902 S.W.2d at 385. Both the power of attorney and the will were drafted by the decedent's attorney on the same day. Id. This Court therefore concluded that the trial court erred by failing to charge the jury that a confidential relationship existed as a matter of law based on both the attorney-client relationship and the grant of an unrestricted power of attorney, and that the presumption of undue influence had to be rebutted with clear and convincing evidence. Id. at 386.

The Court in Matlock cited Mitchell v. Smith, 779 S.W.2d 384 (Tenn. Ct. App. 1989), for the proposition that an unrestricted power of attorney, in and of itself, creates a confidential relationship between the parties. Matlock, 902 S.W.2d at 386. In Mitchell, the decedent, Willie A. Bush, granted an unrestricted power of attorney to his niece, Debra Gloria Banks Smith. Mitchell, 779 S.W.2d at 386-87. Mr. Bush was living with and being cared for by Mrs. Smith and her parents. Id. at 386. Mr. Bush signed his will and the power of attorney in Mrs. Smith's van at the attorney's office, selected by Mrs. Smith, because Mr. Bush was too weak to enter the office. Id. at 387. Mr. Bush's will named Mrs. Smith as executrix and named her as a beneficiary. Id. At Mr. Bush's request, Mrs. Smith placed his will in her safe-deposit box. Id. Mr. Bush and Mrs. Smith signed new signature cards giving Mrs. Smith access to Mr. Bush's bank accounts. Id. Mr. Bush maintained possession of his bank books, and Mrs. Smith did not write checks without prior discussion with Mr. Bush. Id. Before Mr. Bush's death, Mrs. Smith used Mr. Bush's funds to pay for his will, his funeral, and groceries. Id. Testimony showed that Mr. Bush may have executed the power of attorney as early as April 29, 1986, and he signed his will on May 12, 1986. Id. at 387-89. The Court of Appeals therefore held that there was evidence that Mrs. Smith had a confidential relationship with her uncle before he executed his will and affirmed the trial court's denial of a directed verdict on the issue. Id.

The issue of undue influence should "be decided by the application of sound principles and good sense to the facts of each case." Id. at 388 (quoting Halle v. Summerfield, 199 Tenn. 445, 454,

287 S.W.2d 57, 61 (1956)). A careful reading of <u>Matlock</u> and <u>Mitchell</u> shows that an unexercised power of attorney does not in and of itself create a confidential relationship and we clarify <u>Matlock</u> to the extent it suggests otherwise. The core definition of a confidential relationship requires proof of dominion and control. <u>Matlock</u>, 902 S.W.2d at 385-86; <u>Mitchell</u>, 779 S.W.2d 384 at 389. When an unrestricted power of attorney is executed but has not yet been exercised, good sense dictates that there exists no dominion and control and therefore no confidential relationship based solely on the existence of the power of attorney. In <u>Matlock</u>, there was additional evidence of dominion and control based upon the attorney-client relationship and the personal execution by the attorney of the will and the power of attorney. <u>Matlock</u>, 902 S.W.2d at 385-86. In <u>Mitchell</u>, the niece acted as caretaker to her ailing uncle, chose an attorney for him, drove her uncle to the attorney's office where he signed the power of attorney and will in her van, and began exercising her power of attorney before her uncle's death. <u>Mitchell</u>, 779 S.W.2d at 386-87.

We conclude that this case is distinguishable from <u>Matlock v. Simpson</u> and <u>Mitchell v. Smith</u>. The record reveals that Virginia Leonard asked Natasha Currie to drive her and Elizabeth Barnes to Currie's Funeral Home so that the decedent could purchase a pre-arranged funeral plan. Once at the funeral home, Currie and Barnes waited outside the office while Leonard purchased the plan. After purchasing the plan, the decedent requested that Frank Currie draft a power of attorney in favor of Natasha Currie and a will making her the sole beneficiary.

Unlike <u>Matlock</u>, Natasha Currie did not personally execute the documents on the decedent's behalf. Indeed, she was not present when the power of attorney and will were executed and she did not learn of the instruments until after everyone had left the funeral home. Moreover, there is no evidence that she knew of the decedent's intentions at any point before the documents were executed. In short, there is no basis for finding that a confidential relationship gave rise to a presumption of undue influence under the facts of this case. Indeed, the jury in this case determined that the decedent's May 1997 will was valid and that the decedent was not under undue influence at the time of the execution of the power of attorney.[3]

In short, the trial court's decision to set aside the jury's verdict was based on its erroneous interpretation of <u>Matlock</u>. Although we in no way alter the holding expressed in <u>Matlock</u>, we simply hold that it was not applicable under the facts of this case. We therefore conclude that the trial court erred in setting aside the jury's verdict and directing a verdict in favor of Childress.

## <u>CONCLUSION</u>

We hold that a confidential relationship does not arise, as a matter of law, when an unrestricted power of attorney is executed but is not exercised. Therefore, the judgment of the Court

---

[3] Because it had been instructed on the presumption of undue influence, the jury also found that the presumption had been rebutted by clear and convincing evidence.

of Appeals is affirmed.  Costs of the appeal are assessed to the appellant, Billy Joe Childress, for which execution may issue if necessary.

_____
E. RILEY ANDERSON, JUSTICE