IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 3, 2020

## JAMES WARLICK EX REL. JO ANN WARLICK V. LINDA KIRKLAND

**Appeal from the Chancery Court for Marshall County**
**No. 18608      J. B. Cox, Chancellor**

___

### No. M2019-01576-COA-R3-CV

___

This is an action to set aside a quitclaim deed. In the Complaint for a Declaratory Judgment, the attorney-in-fact for the plaintiff alleges that the plaintiff was not competent to execute the quitclaim deed, that she did not intend to convey title to the property, and she did not receive consideration for the conveyance. At the conclusion of the plaintiff's case-in-chief and upon the motion of the defendant, the court directed a verdict in favor of the defendant. The court found, *inter alia*, there was no competent evidence to support the allegations that the plaintiff was not competent to execute the quitclaim deed, that fraud occurred, or that a fiduciary duty owed to the plaintiff was breached, and there was no proof presented that the parties lacked a meeting of the minds. This appeal followed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which John W. McClarty and Arnold B. Goldin, JJ., joined.

Seamus T. Kelly and David J. Goldman, Nashville, Tennessee, for the appellant, Jo Ann Warlick.

Jason C. Davis, Lewisburg, Tennessee, for the appellee, Linda Kirkland.

### OPINION

This action was initiated by James Warlick on behalf of his mother, Jo Ann Warlick (individually "Mrs. Warlick" and collectively "Plaintiff"), in his capacity as her attorney-in-fact. The defendant, Linda Kirkland ("Ms. Kirkland"), has been a family friend for years. The relevant facts and proceedings in the trial court are summarized as follows.

The property at issue is a parcel of land on River Road in Lewisburg, Tennessee ("the Property"), where James and his girlfriend had resided as tenants in a trailer home

since 2012. Upon learning the Property had been foreclosed and was to be auctioned, Mrs. Warlick contacted David Delk ("Mr. Delk") with First Commerce Bank in Chapel Hill, Tennessee (the "Bank") about obtaining a loan to purchase the Property. Upon being advised by Mr. Delk that she did not qualify for a loan without a qualified cosigner, Mrs. Warlick asked her family friend, Ms. Kirkland, to act as a cosigner. Ms. Kirkland agreed. After Ms. Kirkland and Mrs. Warlick signed the requisite loan documents, Ms. Warlick used the loan proceeds to acquire title to the Property in her name only.[1]

Because the Property was purchased by Mrs. Warlick for James and his girlfriend to reside on the Property, James made the monthly payments on the loan to the Bank in lieu of paying rent to his mother. After James incurred expenses in a legal battle regarding a water line to the Property, he asked his mother for an additional $2,000.00. Because Mrs. Warlick did not have the necessary funds, she refinanced and extended the initial loan so James could pay his financial obligations. Once again, it was necessary that Ms. Kirkland co-sign the note for Mrs. Warlick to refinance. Upon completion of the loan transaction, Mrs. Warlick gave James $2,000.00 so he could pay his financial obligations.

In September of 2016, James informed his mother that he needed an additional $10,000.00. To fund his needs, James and Mrs. Warlick approached the Bank to increase the current loan or obtain yet another loan. Mr. Delk informed them that the Bank could not extend or increase the loan because the increased amount would exceed the purchase price of the Property. Moreover, Mr. Delk informed them that the Bank would not refinance the loan unless Ms. Kirkland's name was on the deed, the loan was secured by the Property, and Ms. Kirkland signed the new note as an obligor.

Realizing the increased debt would exceed the purchase price of the Property and that Ms. Kirkland would be obligated for the debt, Mrs. Warlick agreed to convey the Property to Ms. Kirkland in consideration for Mrs. Warlick receiving $10,000.00 from the refinance, of which she would give $5,000.00 to James.[2] Mr. Delk facilitated the preparation of the paperwork for the loan transaction and the quitclaim deed. Mrs. Warlick, James, and Ms. Kirkland were all present at the Bank when the final details were discussed and the loan documents and quitclaim deed were executed. The closing occurred on October 18, 2016. As a result of the closing, Mrs. Warlick was released from any obligation on the loans, Ms. Kirkland became the sole obligor, and title to the Property was placed solely in the name of Ms. Kirkland.

---

[1] Ms. Kirkland was not on the deed, she was merely a co-signer on the note. Moreover, the loan documents contained no record of collateral for the loan.

[2] James Warlick testified that he needed the money to have a "little bit of a cushion" because he was waiting to hear from the disability board about his application for disability benefits.

James and his girlfriend continued living in the trailer on the Property and paid rent to Ms. Kirkland—albeit sporadically—for approximately two years. Following too many missed rent payments and empty promises to catch up, Ms. Kirkland sent an eviction notice to James in August 2018. James responded by commencing this action on behalf of his mother, Mrs. Warlick. The complaint alleges that Mrs. Warlick was not competent when she executed the quitclaim deed; it also alleges that she did not intend to transfer title to the Property and that she received no consideration for the transfer.

The case was tried without a jury. Following Plaintiff's case-in-chief, Ms. Kirkland moved for a directed verdict, which the trial court granted. The court's order reveals that three witnesses testified during Plaintiff's case-in-chief, James Warlick, Dr. Timothy Nash, and Brook Rutherford. Potential witnesses who were not called to testify included Mrs. Warlick, Ms. Kirkland, and David Delk. The final order reads in pertinent part:

> Based upon the arguments of counsel, testimony of the Plaintiff, by and through her Power of Attorney, James Warlick, testimony of witnesses on behalf of the Plaintiff [Dr. Timothy Nash and Brook Rutherford], and the entire record in this matter, the Court makes the following finding of facts:
>
> .    .    .
>
> 1. That the testimony of Dr. Timothy Nash, expert medical witness for the Plaintiff, was credible and did assist the Court in making a determination with regards to the competency of the Plaintiff, Jo Ann Warlick.
>
> 2. That Dr. Timothy Nash was unable to say with any degree of medical certainty whether or not the Plaintiff, Jo Ann Warlick, was competent on October 18, 2016, the date that the quitclaim deed was executed in this matter. Dr. Nash did not treat the Plaintiff at any time relevant to the date and time in question before the Court and only treated the Plaintiff one time in April of 2019, some three (3) years after the signing of the quitclaim deed.
>
> 3. That based on the testimony of Dr. Nash and the medical records entered into evidence at trial, it is clear to the Court that Ms. Jo Ann Warlick was competent on October 18, 2016, the date and time of the execution of the quitclaim deed.
>
> 4. That Plaintiff failed to meet [her] burden of proof with regards to [her] claim of fraud as there was no evidence of any fraud or wrongdoing on the part of the Defendant, Linda Kirkland, presented at trial.

5. That the evidence presented at trial primarily focused on the Defendant providing food and gifts to the Plaintiff's son and Power of Attorney, James Warlick. The Court finds that this behavior is more in line of that of a good neighbor and does not rise to the level of fraud. Further, the proof was absent with evidence of any behavior or actions on the part of the Defendant being directed towards the Plaintiff, Jo Ann Warlick.

6. That it is particularly interesting and of great note to the Court that the Plaintiff did not call the Defendant as a witness in this matter.

7. That Plaintiff failed to prove that there was any breach of fiduciary duty in this matter by First Commerce Bank or David Delk, Loan Officer for First Commerce Bank to Plaintiff, Jo Ann Warlick.

8. That it is particularly interesting and of great note to the Court that the Plaintiff did not call David Delk as a witness in this matter or name First Commerce Bank as a party to this lawsuit.

9. That Plaintiff was unable to put any evidence on the record or submit any proof to the Court with regards to the banking standards, procedures, and duties owed by First Commerce Bank and David Delk to the Plaintiff as Plaintiff's expert witness for this purpose, Brook Rutherford, was unable to be qualified as an expert witness after his admission on the stand and in open court that he did not deal in commercial loans and could not testify about the policies, procedures, or duties owed to a client in a commercial loan.

10. That the testimony of Brook Rutherford was disallowed and not considered by the Court in reaching a conclusion at law in this matter.

11. That Plaintiff failed to meet her burden of proof in this matter at the close of her case-in-chief as there was no evidence that the Plaintiff was not competent on October 18, 2016, that any fraud had taken place, that any fiduciary duty that may have been owed to the Plaintiff had been breached, and no proof presented that there lacked a meeting of minds of the parties.

THEREFORE, Defendant's Rule 50.01 Motion for Directed Verdict is granted and Defendant Linda Kirkland is found to be the lawful and rightful owner of the property located at 1300 River Road, Lewisburg, Tennessee 37091 pursuant to the quitclaim deed that was executed on October 18, 2016 transferring said property from Plaintiff, Jo Ann Warlick, to Defendant, Linda Kirkland.

This appeal followed.

## ANALYSIS

Plaintiff contends the trial court erred in excluding expert medical evidence regarding Mrs. Warlick's mental fitness and expert testimony regarding loan transactions. Plaintiff also contends the trial court erred in granting a directed verdict based on its finding that Plaintiff failed to carry her burden of proof. We will discuss each issue in turn.

## I. EXPERT TESTIMONY

"We review the trial court's decision to admit or exclude evidence by an abuse of discretion standard." *Biscan v. Brown*, 160 S.W.3d 462, 468 (Tenn. 2005) (citing *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004)). The decision to reject evidence is based on the relevance of the proffered evidence under the Tennessee Rules of Evidence 401 and 402. *State v. DuBose*, 953 S.W.2d 649, 653 (Tenn. 1997). Evidence is relevant and admissible if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Biscan*, 160 S.W.3d at 468 (quoting Tenn. R. Evid. 401).

### A. Mental Fitness

Plaintiff erroneously contends the trial court erred by "excluding" the expert testimony of Dr. Timothy Nash. Contrary to this contention, the court found Dr. Nash to be a competent and credible witness who assisted the trial court "in making a determination with regards to the competency of the Plaintiff, Jo Ann Warlick." However, the trial court found that some of the evidence Plaintiff proffered was not relevant to the question of Mrs. Warlick's competence when the quitclaim deed was executed in 2016.

"A deed is valid only if it is the product of the grantor's conscious, voluntary act." *Fell v. Rambo*, 36 S.W.3d 837, 846 (Tenn. Ct. App. 2000). Conversely, "a deed is void if, **at the time of its execution**, the grantor was mentally unbalanced, without intelligent comprehension of the act being performed, and incapable of transacting." *Id.* (citations omitted) (emphasis added). "A party seeking to rescind a conveyance because of mental incapacity has the burden of proof." *Id.* (citing *Williamson v. Upchurch*, 768 S.W.2d 265, 269 (Tenn. Ct. App. 1988). Thus, it was incumbent on Plaintiff to present relevant and competent evidence to the issue of competency **at the time of the execution of the quitclaim deed**.

Specific to the issue of Mrs. Warlick's competency on the day she executed the quitclaim deed, the trial court found:

2. That Dr. Timothy Nash was unable to say with any degree of medical certainty whether or not the Plaintiff, Jo Ann Warlick, was competent on October 18, 2016, the date that the quitclaim deed was executed in this matter. Dr. Nash did not treat the Plaintiff at any time relevant to the date and time in question before the Court and only treated the Plaintiff one time in April of 2019, some three (3) years after the signing of the quitclaim deed.

As noted above, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Biscan*, 160 S.W.3d at 468 (quoting Tenn. R. Evid. 401). The admission or exclusion of evidence is within the trial court's discretion. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222 (Tenn. Ct. App. 1999) (citations omitted). The decision to admit or exclude evidence is subject to three determinations on review:

(1) whether the factual basis for the decision is supported by the evidence, (2) whether the trial court identified and applied the applicable legal principles, and (3) whether the trial court's decision is within the range of acceptable alternatives.

*Id.* at 223 (citing *BIF v. Service Constr. Co .*, No. 87-136-II, 1988 WL 72409, at *2 (Tenn. Ct. App. July 13, 1988)). Further, "[a]ppellate courts should permit a discretionary decision to stand if reasonable judicial minds can differ concerning its soundness." *Id.* (citing *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999)).

As the trial court correctly noted, Dr. Nash did not treat Mrs. Warlick at any time relevant to the execution of the 2016 quitclaim deed. Moreover, he treated Mrs. Warlick only one time thereafter, in April of 2019, three years after the deed was signed. Thus, the record reveals that the trial court took the applicable law into account and made a discretionary decision consistent with the facts before the court. Accordingly, we affirm the trial court's decision on this issue.

B. Commercial Loan

Plaintiff contends the trial court erred in excluding the testimony of Brook Rutherford based on its finding that Mr. Rutherford was not qualified to testify as an expert witness concerning commercial loan transactions such as the one at issue.

A trial court's first concern when assessing the admissibility of expert testimony is "whether the witness is qualified by knowledge, skill, experience, training, or education to express an opinion within the limits of his or her expertise." *State v. Scott*, 275 S.W.3d 395, 402 (Tenn. 2009) (citing *State v. Stevens*, 78 S.W.3d 817, 834 (Tenn. 2002)). "This determination hinges upon whether the proposed expert's qualifications authorize him or

her to give an informed opinion upon the fact or issue for which his or her testimony is being proffered." *Id.* (citing *Stevens*, 78 S.W.3d at 834). Essentially, the court must ask "whether the witness is an expert, either through knowledge, skill, experience, training, or education, in the area in which he or she is providing testimony." *Id.* (citing Tenn. R. Evid. 702).

During Plaintiff's case-in-chief, she called Mr. Rutherford as an expert witness on banking and loan transactions. Mr. Rutherford testified that he had significant experience in banking but was not familiar with First Commerce Bank or its policies and procedures. When questioned by the trial court, Mr. Rutherford stated that he only handled "personal loans" and he did not process "commercial loans." He also admitted that he was not trained in commercial loans. Based on the admissions by Mr. Rutherford and because the loan at issue was "a commercial loan," the trial court ruled that Mr. Rutherford was not qualified to testify as an expert witness concerning the loan at issue. The court also ruled that his testimony relating to the loan would be stricken. Plaintiff called no other witnesses to testify about the propriety of the loan transaction.

Finding no error with the trial court's determination that Mr. Rutherford was not qualified by knowledge, skill, experience, training, or education to express an opinion concerning the loan transaction, we affirm the trial court's decision on this issue.

## II. DIRECTED VERDICT

Plaintiff contends the trial court erred in entering a directed verdict because there was ample evidence to support a finding the conveyance of the Property was not valid.

We review a trial court's decision to grant a directed verdict under the following standard:

> This Court reviews the trial court's decision to grant a directed verdict de novo, applying the same standards as the trial court. *Gaston v. Tenn. Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 819 (Tenn. 2003). We will affirm a directed verdict "only when the evidence in the case is susceptible to but one conclusion." *Childress v. Currie*, 74 S.W.3d 324, 328 (Tenn. 2002) (citing *Eaton* [*v. McLain*], 891 S.W.2d [587,] 590 [(Tenn. 1994)]). We must "take the strongest legitimate view of the evidence favoring the opponent of the motion," and must accept all reasonable inferences in favor of the nonmoving party. *Id.* We may affirm the motion "only if, after assessing the evidence according to the foregoing standards, [we] determine[] that reasonable minds could not differ as to the conclusions to be drawn from the evidence." *Id.*

*Biscan*, 160 S.W.3d at 470.

Plaintiff asserted a claim of fraud. But, as the trial court correctly determined, "there was no evidence of any fraud or wrongdoing." The evidence presented at trial primarily focused on Ms. Kirkland providing food and gifts to James Warlick. We agree with the court's conclusion that this conduct was more in line with "that of a good neighbor and [did] not rise to the level of fraud." We also agree that the evidence failed to show "any behavior or actions on the part of [Ms. Kirkland] being directed toward[] Plaintiff." As the court did, we find "particularly interesting and of great note" that Plaintiff chose not to call Ms. Kirkland as a witness.

Additionally, the trial court correctly determined that Plaintiff "failed to prove that there was any breach of fiduciary duty in this matter by First Commerce Bank or David Delk, Loan Officer for First Commerce Bank to Plaintiff." In fact, we find a complete absence in the record of evidence to support this claim. Like the trial court, we also find it "particularly interesting and of great note . . . that the Plaintiff did not call David Delk as a witness in this matter or name First Commerce Bank as a party to this lawsuit." As the trial court concluded, Plaintiff submitted no competent proof "with regards to the banking standards, procedures, and duties owed by First Commerce Bank and David Delk to the Plaintiff[.]"

We have affirmed the trial court's findings that Dr. Nash provided no competent evidence to support a finding that Mrs. Warlick lacked the requisite mental capacity to convey the Property to Ms. Kirkland in 2016 and that the testimony of Mr. Rutherford was excluded because he was not competent to testify as an expert witness concerning commercial loan transactions.

Accordingly, we affirm the trial court's findings that "Ms. Jo Ann Warlick was competent on October 18, 2016, the date and time of the execution of the quitclaim deed" and that there was no evidence "that any fraud had taken place, that any fiduciary duty that may have been owed to . . . Plaintiff had been breached, and no proof presented that there lacked a meeting of minds of the parties." Accordingly, we affirm the decision to grant Ms. Kirkland's motion for a directed verdict.

### IN CONCLUSION

Therefore, we affirm the judgment of the trial court and remand with costs assessed against the appellant, James Warlick, as Power of Attorney for Jo Ann Warlick.

_____
FRANK G. CLEMENT JR., P.J., M.S.