IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 1, 2024

## IN RE ESTATE OF CLIFTON DATES, JR.

**Appeal from the Probate Court for Shelby County**
**No. PR-28101      Joe Townsend, Judge**
_____

**No. W2024-00488-COA-R3-CV**
_____

This is an appeal from a dispute over a piece of real estate in Shelby County, Tennessee. The property owner executed a quit claim deed transferring ownership of the property to his daughter, who was also his attorney-in-fact, shortly before he died in 2023. After his death, the man's surviving spouse filed a petition to set the deed aside, claiming that the daughter obtained the deed by undue influence. The trial court held a bench trial and entered an order setting the deed aside. The daughter timely appeals to this Court. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which W. NEAL MCBRAYER and CARMA DENNIS MCGEE, JJ., joined.

Kimbrielle Dates-Watkins, Arlington, Tennessee, pro se appellant.

Chasity Sharp Grice, Memphis, Tennessee, for the appellee, Joanne Dates.

## OPINION

### BACKGROUND

The property at issue is located at 190 Dubois Drive in Memphis, Tennessee (the "Property"), and was owned by Clifton Dates, Jr. ("Decedent") until shortly before his death. In 2016, Decedent executed both a general durable power of attorney and medical power of attorney naming his daughter, Kimbrielle Dates-Watkins ("Daughter" or

"Appellant"), Decedent's attorney-in-fact. Then, in 2021, Decedent married his fourth wife, Joanne Dates ("Wife" or "Appellee").[1]

On November 20, 2023, Decedent executed a quit claim deed conveying the Property to Daughter for $1.00. On December 9, 2023, Decedent died intestate. Daughter then recorded the quit claim deed in the Shelby County Register of Deeds Office on December 13, 2023, just four days after Decedent's death. On December 28, 2023, Wife filed a petition to set aside the quit claim deed and for a declaratory judgment in the Probate Court for Shelby County (the "trial court"). Wife alleged that Daughter and Decedent were in a confidential relationship and that Daughter exerted undue influence over her father in order to obtain the quit claim deed to the Property. Wife further alleged that Decedent lacked capacity at the time he executed the quit claim deed and that Decedent was in "a vulnerable and weakened position and highly susceptible to undue influence[]" in the time leading up to his death. Wife claimed that she still resided on the Property and that Daughter had used her purported ownership of the Property to have the utilities shut off. On January 4, 2024, the trial court entered an order appointing Wife administratrix of Decedent's estate. On the same day, the trial court entered a temporary restraining order enjoining Daughter from removing anything from the Property and from interfering with Wife's access to the Property.

Daughter responded to the petition to set aside the deed on January 18, 2024,[2] denying that Decedent lacked capacity to execute the quit claim deed. Daughter attached a news article about Decedent to the response in which a family friend is quoted as saying that he saw Decedent the day prior to his death and that Decedent was "the same old Clift." Nonetheless, in her response, Daughter stated that she "was handling her father's finances up to the date of his untimely death." Daughter also alleged that Decedent's relationship with Wife was "on-again off-again" and that the police were called to the Property several times during the marriage. Daughter attached a police report from May 6, 2023, reflecting Decedent as the complainant. During this incident, Decedent reported that he was "handicapped" and legally blind and that Wife was mistreating him.

Although there is no transcript in the record, the trial court's final order reflects that a bench trial was held on March 7, 2024.[3] The trial court entered the final order on March 14, 2024, setting aside the quit claim deed. The trial court reasoned that Decedent and

[1] Appellant and Appellee share the same last name. For clarity, we refer to them as "Daughter" and "Wife." No disrespect is intended.

[2] Daughter filed her initial response on January 17, 2024, and another response on January 18, 2024. As best we can discern from the record, the January 18, 2024 filing is meant to be an amended response. In any event, the filings are largely the same.

[3] While Daughter proceeds pro se in this appeal, she was represented by counsel in the trial court.

Daughter were in a confidential relationship by virtue of Daughter's role as attorney-in-fact and that the transaction at issue benefitted Daughter. Accordingly, a presumption of undue influence arose. The trial court further reasoned that suspicious circumstances suggested undue influence:

> A prima facie case of undue influence exists when suspicious circumstances indicate that the weaker party did not act freely and independently. There is not a prescribed type or number of suspicious circumstances necessary to show undue influence, rather the Court applies "sound principles and good sense to the facts of each case." *Kelley* [*v*]. *Johns*, 96 S.W.3d [189,] 195 (Tenn. [Ct. App.] 2002). Suspicious circumstances frequently relied on to establish undue influence include: 1) existence of a confidential relationship between grantor and grantee; 2) grantor's physical or mental deterioration; and 3) grantee's active involvement in procuring the deed. *Id.* at 196. Other suspicious circumstances to note include grantor's advanced age and lack of independent advice received by grantor. *Id.* While these circumstances are typically applied in undue influence claims in the context of a will contest, Tennessee courts have extended the application to set aside a deed on the basis of undue influence. *Floyd v. Atkins*, 553 S.W.3d 469[,] 476 (Tenn. [Ct. App.] 2017). In this case the Court finds several suspicious circumstances: 1) The Quit Claim Deed indicates that [Daughter] prepared it; 2) there was no consideration for the transfer of the property; 3) [Decedent] did not receive independent advice of counsel regarding the transfer of the Property; and 4) the Deed wasn't recorded until after the death of Decedent.

In addition to setting aside the quit claim deed to Daughter, the trial court ordered that the Property "is hereby made an asset subject to probate under this estate[,]" and that Wife, as administratrix, could list the Property for sale. Daughter filed a notice of appeal on March 28, 2024, and a statement of the evidence on April 16, 2024.[4]

---

[4] According to our Rules of Appellate Procedure,

> [i]f no stenographic report, substantially verbatim recital or transcript of the evidence or proceedings is available, . . . and a statement of the evidence or proceedings is a reasonable alternative to a stenographic report, the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. The statement should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal. The statement, certified by the appellant or the appellant's counsel as an accurate account of the proceedings, shall be filed with the clerk of the trial court within 60 days after filing the notice of appeal. Upon filing the statement, the appellant shall simultaneously serve notice of the filing on the appellee, accompanied by a short and plain declaration of the issues the appellant intends to present on appeal. . . . If the appellee has objections to the statement as filed, the appellee shall file objections thereto with the clerk of the trial court within fifteen days after service of the

Daughter/Appellant raises four issues on appeal, which we restate slightly:

I.      Whether a family relationship alone creates a confidential relationship.

II.     Whether a confidential relationship exists by virtue of the power of attorney, where the power of attorney was not used in the conveyance at issue.

III.    Whether Wife/Appellee failed to establish undue influence.

IV.     Whether the trial court should have drawn an adverse inference against Wife for failing to call the notary who executed the quit claim deed as a witness at trial.

## STANDARD OF REVIEW

This case was tried by a bench trial.

> In a non-jury case such as this one, appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). We review the trial court's resolution of questions of law de novo, with no presumption of correctness.

*Kelly v. Kelly*, 445 S.W.3d 685, 691–92 (Tenn. 2014). Moreover, whether undue influence has occurred is a question of fact, and, "[a]s such, an appellate court must 'affirm the trial court's finding of undue influence unless the evidence preponderates otherwise.'" *Ellis v. Duggan*, 644 S.W.3d 85, 115 (Tenn. Ct. App. 2021) (quoting *Jarnigan v. Moyers*, 568 S.W.3d 585, 591 (Tenn. Ct. App. 2018)).

## DISCUSSION

The primary issue on appeal is whether Daughter procured the quit claim deed by undue influence over Decedent. Influence itself over a grantor is not sufficient to set aside a deed; rather, "it is the undue influence thereof which is prohibited." *Johnson-Murray v.*

---

declaration and notice of the filing of the statement. Any differences regarding the statement shall be settled as set forth in subdivision (e) of this rule.

Tenn. R. App. P. 24(c). Wife did not object to the statement of evidence Daughter filed.

*Burns*, 525 S.W.3d 625, 634 (Tenn. Ct. App. 2017) (citing *Parham v. Walker*, 568 S.W.2d 622, 624 (Tenn. [Ct.] App. 1978)).  A finding of undue influence in a case like the one at bar requires a confidential relationship, meaning "any relationship which gives one person dominion and control over another."  *Id.* (quoting *Childress v. Currie*, 74 S.W.3d 324, 328 (Tenn. 2002)).  A confidential relationship may arise where "there is some legal connection between the dominant party and the weaker party, such as when a dominant party is granted a power of attorney."  *Id.* at 635 (citing *In re Est. of Brevard*, 213 S.W.3d 298, 302–03 (Tenn. Ct. App. 2006)).  Confidential relationships may also arise from family or other relationships, although "proof of 'family and other relationships' alone does not establish a confidential relationship."  *Id.* (citing *Matlock v. Simpson*, 902 S.W.2d 384, 385–86 (Tenn. 1995)).

"The dominant rule in Tennessee and elsewhere is that the existence of a confidential relationship, followed by a transaction wherein the dominant party receives a benefit from the other party, gives rise to a presumption of undue influence that may be rebutted only by clear and convincing evidence of the fairness of the transaction."  *Ellis*, 644 S.W.3d at 114 (quoting *Matlock*, 902 S.W.2d at 386) (internal quotations omitted).

In this case, the trial court found that Daughter and Decedent shared a confidential relationship due to Decedent's power of attorney appointing Daughter as his attorney-in-fact.  However,

> [n]o confidential relationship arises when an unrestricted power of attorney is executed but has not yet been exercised. *Childress*, 74 S.W.3d at 329. A power of attorney is restricted and a confidential relationship does not exist as a matter of law when the power of attorney never came into effect and the person granting the power of attorney may alter or revoke it at any time. *McKinley v. Holt*, No. 03A01-9807-PB-00220, 1999 WL 233400, at *4, 1999 Tenn. App. LEXIS 247, at *12 (Tenn. Ct. App. Apr. 15, 1999); *see also Smith v. Smith*, 102 S.W.3d 648, 653 (Tenn. Ct. App. 2002).

*Parish v. Kemp*, 179 S.W.3d 524, 531 (Tenn. Ct. App. 2005).

The burden of establishing a confidential relationship is on the party alleging its existence.  *Parham*, 568 S.W.2d at 624.  Once a confidential relationship is established and the presumption of undue influence arises, the burden shifts to the dominant party to establish that the transaction at issue was fair.  *Parish*, 179 S.W.3d at 531 (citing *In re Est. of Hamilton*, 67 S.W.3d 786, 793 (Tenn. Ct. App. 2001)).  Fairness must be proven by clear and convincing evidence.  *Id.*  Just as undue influence may be established through the existence of "suspicious circumstances[,]" *Ellis*, 644 S.W.3d at 115 (citing *Jarnigan*, 568 S.W.3d at 591), the presumption of undue influence may be rebutted by showing the absence of suspicious circumstances.  *Id.* (citing *In re Est. of Lipscomb*, No. W2018-01935-

COA-R3-CV, 2020 WL 1549596, at *10 (Tenn. Ct. App. Apr. 1, 2020)).  Relevant circumstances include:

> (1) the decedent's advanced age and/or physical or mental deterioration; (2) the dominant party's active involvement in the transactions at issue; (3) secrecy concerning the transaction's existence; (4) the lack of independent advice; (5) the decedent's illiteracy or blindness; (6) the unjust or unnatural nature of the transaction; (7) the decedent being in an emotionally distraught state; (8) discrepancies between the transaction and the decedent's expressed intentions; and (9) fraud or duress directed toward the decedent.

*Id.*

For her first two issues on appeal, Daughter argues that the trial court erred in finding a confidential relationship between Daughter and Decedent.  She argues that a confidential relationship does not exist by virtue of a family relationship alone and that no confidential relationship exists here because Daughter did not use the authority granted to her by the power of attorney to execute the deed at issue.  Both arguments are unpersuasive.

First, the trial court's order does not suggest that it found a confidential relationship based on a family relationship alone, as Daughter's first issue suggests.  Instead, the trial court reasoned that "[Daughter] was the attorney-in-fact for [Decedent], was aware of the power of attorney and had utilized the power of attorney on numerous occasions for many years.  Thus, a confidential relationship existed between [Daughter] and Decedent."  The trial court's order does not opine on a confidential relationship arising by virtue of the father-child relationship.  As such, Daughter's point regarding family relationships is correct but inapposite under the circumstances.

Second, we have no issue concluding that Daughter exercised the power of attorney at issue, notwithstanding the fact that Decedent also signed the quit claim deed.  As the trial court noted, Daughter used the power of attorney many times over the years before Decedent's death.  Daughter conceded in her answer to Wife's petition that "[Daughter] was handling her father's finances up to the date of his untimely death."  Daughter's answer further provides that "[o]n November 20, 2023 both [Daughter], **in her role as attorney-in-fact**, and [Decedent], signed a Quit Claim Deed transferring ownership of [the Property] to [Daughter]." (Emphasis added).  Moreover, Daughter filed her own statement of the evidence in the absence of a trial transcript, wherein she detailed her role as Decedent's attorney-in-fact:

> [Daughter] was [Decedent's] Power of Attorney and [ ] she assisted in most of his business and personal matters that consisted of medical, business interest, litigation, government benefits (VA & SSA), **real estate**, insurance policies, taxes, and sometimes banking matters. [Daughter] also stated that

she is listed on the mortgage along with [Decedent], and that her name also appears on the Shelby County property taxes, the City of Memphis property taxes, deed, and homeowners' insurance policy.

(Emphasis added).

By Daughter's own admissions, Decedent's power of attorney cannot be characterized as unexercised. Daughter admits to handling Decedent's financial and real estate affairs, and the quit claim deed itself bears Daughter's signature along with the designation "POA." Moreover, our case law suggests that finding a confidential relationship and undue influence is not foreclosed simply because Decedent also signed the quit claim deed at issue. *See, e.g.*, *In re Conservatorship of Groves*, 109 S.W.3d 317 (Tenn. Ct. App. 2000) (deed to real property found to be product of undue influence and rescinded where property owner transferred property to her brother-in-law while in a confidential relationship with the brother-in-law and his wife). In this regard, the line Daughter asks us to draw is arbitrary–in a confidential relationship, whether the weaker party physically signed the document at issue is not necessarily a good indicator of the parties' relationship or whether the weaker party was unduly influenced to sign.

Thus, we agree with the trial court that Decedent and Daughter were in a confidential relationship.

For her third issue, Daughter maintains that the trial court erred in finding undue influence. Daughter relies on her statement of the evidence, which provides that at trial, Wife testified that the day before his death, Decedent appeared normal and drove himself. Respectfully, we are unpersuaded notwithstanding Wife's statement. This single statement by Wife has little to do with the relationship between Daughter and Decedent and reveals nothing about the circumstances surrounding the deed's execution on November 20, 2023. Indeed, the scant record before us contains no information whatsoever as to what transpired around the quit claim deed, aside from the fact that it bears Daughter's and Decedent's signatures. While Wife's statement may shed light on Decedent's mental state the day before his death, the trial court found several other suspicious circumstances in this case suggesting undue influence, noting: "1) The Quit Claim Deed indicates that [Daughter] prepared it; 2) there was no consideration for the transfer of the property; 3) the Decedent did not receive independent advice of counsel regarding the transfer of the Property; and 4) the Deed wasn't recorded until after the death of Decedent." Importantly, Daughter does not challenge or even address any of these findings in her appellate brief. Moreover, Daughter's statement of the evidence contains no facts or testimony adduced at trial countering the above findings by the trial court.

Even if Decedent appeared normal the day before his death, this does not change the fact that Decedent and Daughter were in a confidential relationship and entered into a

transaction that benefitted Daughter. Accordingly, the trial court correctly concluded that a presumption of undue influence arose in this case. Decedent's power of attorney appointing Daughter as his attorney-in-fact, coupled with the transaction that is undisputedly beneficial to Daughter, gives rise to the presumption. *See Ellis*, 644 S.W.3d at 114 ("[T]he existence of a confidential relationship, followed by a transaction wherein the dominant party receives a benefit from the other party, gives rise to a presumption of undue influence that may be rebutted only by clear and convincing evidence of the fairness of the transaction.") (quotations omitted); *Johnson-Murray*, 525 S.W.3d at 634–35 ("A presumption of undue influence arises when there is a confidential relationship followed by a transaction in which the dominant party receives a benefit from the other party." (citing *Childress*, 74 S.W.3d at 328)).

As such, it was Daughter's burden at trial to rebut this presumption by clear and convincing evidence and demonstrate the fairness of the transaction. Daughter could have done so by showing an absence of suspicious circumstances surrounding the transaction. *Ellis*, 644 S.W.3d at 115. To reiterate, however, Daughter makes no argument in this regard on appeal; indeed, Daughter does not argue that she rebutted any presumption or that there were no suspicious circumstances surrounding the transaction. Instead, Daughter only argues that the presumption of undue influence never arose at all, an argument we have already addressed. Moreover, even if Daughter made such an assertion in her appellate brief, nothing in the record preponderates against the trial court's findings about the presence of suspicious circumstances. The record is sparse, containing only two volumes of technical record and no transcript; further, Daughter's statement of the evidence is primarily a procedural history of this case as opposed to a proper statement of the evidence. *See In re Connor B.*, 603 S.W.3d 773, 784 (Tenn. Ct. App. 2020) (noting that "the statement of the evidence adopted by the trial court fails to 'convey a fair, accurate and complete account' of the proceedings in accordance with Tennessee Rule of Appellate Procedure 24. Instead, the statement of the evidence merely contains a procedural history of the case and a chronology of the pleadings filed therein"). While the statement of the evidence mentions a few pieces of testimony from the trial, which we have noted herein, it is not enough to find that Daughter rebutted the presumption of undue influence by the exacting clear and convincing standard.

Finally, Daughter asserts that the trial court should have drawn an adverse inference against Wife because Wife did not call the notary who executed the quit claim deed as a witness at trial. Daughter notes that the notary was present in the courtroom the day of trial and was available to testify.

This issue is waived, however, as there is nothing in the record before us showing that Daughter properly preserved this issue in the court below. The trial court's order does not address this issue, and Daughter only briefly mentions the notary in her statement of the evidence. Specifically, the statement provides that "Notary Helen Washington was told

- 8 -

by attorney Burdette to be present in court on 03/05/2024 as a witness. However, Helen Washington was never called to the stand to testify." Nonetheless, attorney Burdette was Daughter's trial counsel, not Wife's counsel. As there is no transcript or record of exhibits in the technical record, we cannot discern what happened at trial regarding Ms. Washington and why she was or was not called as a witness, nor can Daughter cite to a point in the record where she raised this issue before now. Under the circumstances, Daughter did not properly preserve this issue for review, and we deem it waived. *See Tanner v. Whiteco, L.P.*, 337 S.W.3d 792, 796 (Tenn. Ct. App. 2010) ("[I]t is incumbent upon the appellant to provide a record that is adequate for a meaningful review." (citing Tenn. R. App. P. 24(b))); *State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993) ("When a party seeks appellate review there is a duty to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issues forming the basis of the appeal." (citing *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983))).

Accordingly, we conclude that the trial court correctly found a presumption of undue influence as to the November 20, 2023 quit claim deed. We further conclude that it was Daughter's burden to rebut this presumption by clear and convincing evidence at trial, and there is no evidence in the record that she met her burden. As such, we affirm the trial court's ruling setting the quit claim deed aside.

#### CONCLUSION

The ruling of the Probate Court for Shelby County is hereby affirmed. Costs on appeal are assessed to the appellant, Kimbrielle Dates-Watkins, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE

- 9 -