# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
February 28, 2025 Session[1]

## RALPH RAY BAILEY, PERSONAL REPRESENTATIVE OF THE ESTATE OF ROBERTA BAILEY v. SONYA SMITH WRIGHT, EXECUTRIX, ESTATE OF VONDIE LEE SMITH

### Appeal from the Circuit Court for Wilson County
### No. 2020-CV-552    Robert E. Lee Davies, Senior Judge

_____

### No. M2023-01770-COA-R3-CV

_____

The Testator asked her great-niece, a licensed Attorney, to make changes to her will that were to the Attorney's financial benefit. The Attorney returned to the Testator a revised version of the will, which included the changes requested by the Testator and additional changes. Several months later, the Testator executed the revised will. The Testator's Nephew, acting as a personal representative, claimed that the Testator lacked capacity and that the new will was a product of undue influence. While the trial court instructed the jury that it must decide which party bore the burden of proof regarding undue influence, the trial court gave the jury a verdict form that definitively indicated that Nephew retained the burden of proof. The jury found in the Attorney's favor. On appeal, the Nephew presents challenges to several evidentiary rulings as well as a jury instruction concerning the Testator's capacity, which we affirm. However, Nephew also asserts that the trial court incorrectly instructed the jury with respect to his undue influence claim. We conclude that the trial court's inconsistent instructions regarding the Nephew's undue influence claim warrant a retrial as to this claim.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated in Part; Affirmed in Part; Case Remanded

JEFFREY USMAN, J., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

L. Garrett Anglin, Murfreesboro, Tennessee, and Hugh Green, Lebanon, Tennessee, for the appellant, Ralph Ray Bailey, personal representative of the Estate of Roberta Bailey.

---

[1] Oral arguments in this appeal took place at Belmont University College of Law in Nashville, Tennessee.

Donald Capparella, Tyler Yarbro, and Jacob Vanzin, Nashville, Tennessee, for the appellee, Sonya Smith Wright, executrix of the Estate of Vondie Lee Smith.[2]

**OPINION**

I.

This appeal concerns the fate of the estate of Vondie Lee Smith, who passed away in June 2020. Ms. Smith's last will and testament devises "all of [her] other[3] real property, personal property, including but not limited to any bank accounts, motor vehicles, home furnishings, . . . cash," and her residual estate to Sonya Smith Wright, the Appellee in this case, and to Ms. Wright's husband.

In two prior wills, which were executed in 1987 and 2000, Ms. Smith did not previously devise any property to Ms. Wright. Ms. Wright is Ms. Smith's great-niece by marriage, and Ms. Wright is also a licensed attorney in the State of Tennessee. Ms. Wright played a role in modifying Ms. Smith's last will. Appellant Ralph Ray Bailey, acting as the personal representative of the estate of Ms. Smith's sister, alleged before the trial court that Ms. Wright unduly influenced Ms. Smith to change her will to obtain a financial windfall.

In addition to this allegation of undue influence, Mr. Bailey also claimed that Ms. Smith lacked the necessary mental capacity to execute a new will. Ms. Smith spent the last three years of her life as a resident of Quality Care, a rehabilitation center. Her residency at Quality Care began after sustaining injuries from a series of falls that occurred between 2016 and 2017. Her injuries included a compression fracture, a scalp laceration, and a head injury. The last of these three injuries is the subject of significant disagreement between the parties. According to Mr. Bailey, Ms. Smith's head injury was better characterized as a "traumatic brain injury" that caused her to experience "cognitive and mental decline" and eventually develop dementia. Ms. Wright disagrees, insisting that an expert considered Ms. Smith's "neurological condition . . . 'non-operative'" and that Ms. Smith had sound capacity in the years leading up to her death.

Ms. Wright asserts that Ms. Smith asked Ms. Wright to make a series of changes to her pre-existing will in September 2016. This conversation took place after Ms. Smith's first two falls but before the last fall that resulted in the disputed head injury. Ms. Wright

---

[2] There are multiple different spellings of Ms. Smith's first name in the record. We use "Vondie," which is the spelling used in the disputed last will and testament.

[3] In a prior section, Ms. Smith devised ownership shares of the family farm to the Nephew and his brother.

- 2 -

asserts that, at the end of what was otherwise a standard visit with her great-aunt by marriage, Ms. Smith "unexpectedly" gave her "two typed but unsigned documents with . . . handwritten notes on them." Ms. Wright states that they were Ms. Smith's pre-existing will and Ms. Smith's husband's pre-existing will. According to Ms. Wright, Ms. Smith asked Ms. Wright to "retype" new wills so that she could execute them and solidify the desired changes to her estate plan. Mr. Smith predeceased Ms. Smith, and his will is not at issue in this litigation. These allegedly handwritten changes included provisions that devised a significant portion of Ms. Smith's estate to Ms. Wright.

Ms. Wright does not specialize in estate planning, but her law partner, Amy Farrar, has significant experience in that practice area. Ms. Wright testified that she gave the version of Ms. Smith's will that featured Ms. Smith's handwritten comments to Ms. Farrar and asked Ms. Farrar to make Ms. Smith's desired changes. Ms. Farrar responded that she would be willing to make Ms. Smith's desired changes but only after having an in-person discussion with Ms. Smith. Ms. Smith never did meet with Ms. Farrar, and, accordingly, Ms. Farrar never did any estate planning work for Ms. Smith.

Nevertheless, Ms. Smith's will was eventually revised. While Ms. Wright and Ms. Farrar both expressed some uncertainty during their depositions about how this took place, Ms. Wright accepts for the purpose of this appeal, and trial testimony corroborates, that Ms. Wright "gave [Ms. Smith's will] to their legal secretary, who typed [it] up, including [Ms. Smith's] handwritten changes from the unsigned typed wills." Accordingly, the modified version of Ms. Smith's will includes what Ms. Wright asserts were Ms. Smith's handwritten changes. The changes, however, were not limited to Ms. Smith's handwritten changes. To the contrary, the modified will also includes new provisions that Ms. Smith had not drafted or included in her handwritten notes, including a no-contest clause.

With the new will completed, Ms. Wright hand-delivered the new will to Ms. Smith and encouraged her to promptly execute it. However, Ms. Smith did not act for some time. She eventually went to a Farm Bureau office and executed the new will on February 16, 2017, which was approximately one month after the fall that caused her head injury and her admission as a resident at Quality Care. Ms. Wright indicates that she tried to visit Ms. Smith "almost every day at Quality Care." Ms. Wright did not, however, attend the execution of the will with Ms. Smith. According to the witnesses to the will signing, Ms. Smith did not seem to be operating under duress or coercion when she visited Farm Bureau. Mr. Bailey and his supporting witnesses, however, maintain that Ms. Smith was not of sound mind by the time she visited Farm Bureau and executed her new will. This lawsuit began after Ms. Smith passed away several years later.

A recurring issue that has been at the center of the parties' litigation has been the question of the allocation of the burden of proof in considering Mr. Bailey's undue influence claim. Mr. Bailey has advocated, since the inception of this lawsuit, that Ms. Wright should bear a heightened burden of proof at trial. He contends that a presumption

of undue influence arose in these circumstances as a matter of law when Ms. Wright acted on Ms. Smith's behalf as her attorney and updated Ms. Smith's will in a manner that worked for Ms. Wright's financial benefit. Ms. Wright disagrees, maintaining instead that a presumption of undue influence does not automatically arise from the existence of an attorney-client relationship paired with a beneficial transaction. According to her, an undue influence claimant like Mr. Bailey needs to show more before the burden of proof shifts to her.

The parties advanced cross motions for summary judgment before the trial court. Concerning Mr. Bailey's lack of capacity claim, the trial court denied both parties' dueling motions for summary judgment on the basis that "there are facts from which competing inferences as to [Ms. Smith's] mental capacity could be drawn." Concerning the question of undue influence, the trial court noted that Ms. Wright shared a familial relationship with Ms. Smith but also that "by the thinnest of margins, an attorney-client relationship existed." The trial court was hesitant to decide at the summary judgment stage that this attorney-client relationship automatically gave rise to a presumption of undue influence as a matter of law, reasoning instead that "the creation of the attorney-client relationship creates at least an inference that there was a confidential relationship from which [Mr. Bailey] may argue undue influence."[4] Later, Mr. Bailey asked the trial court to reconsider its summary judgment rulings, which prompted the trial court to enter an order concerning its reconsideration. Although it technically reserved Mr. Bailey's arguments for trial, the trial court indicated that it had changed its mind concerning the existence of a confidential relationship between Ms. Smith and Ms. Wright. Specifically, the trial court explained that it had "review[ed] . . . Tennessee case law on this issue" and concluded "that proof of an attorney-client relationship establishes the existence of a confidential relationship." Having already found that Ms. Smith and Ms. Wright enjoyed an attorney-client relationship, the trial court wrote further that it was "inclined to rule that . . . [the] attorney-client relationship between Defendant Sonya Wright and Decedent Vondie Smith, thus, by law, also create[d] a confidential relationship."

Mr. Bailey also sought to propose a presumption of undue influence through a different mechanism: jury instructions. He proposed several special jury instructions, including the following:

> As a matter of law, Defendant Sonya Smith Wright had an attorney-client relationship with the Decedent through her involvement in the preparation of Decedent's will. Therefore, as a matter of law, I instruct you that Defendant Sonya Smith Wright had a legal confidential relationship with

---

[4] The trial court granted Ms. Wright's motion for summary judgment only insofar as Mr. Bailey had asserted that the new will was improperly executed as a matter of law. Mr. Bailey has not appealed the trial court's ruling that Ms. Smith's last will and testament contained all necessary formalities to constitute a validly executed will.

the Decedent.

       I further instruct you that Decedent's will is presumed to have been obtained by the undue influence of Sonya Smith Wright due to the legal confidential relationship between the Decedent and Sonya Smith Wright and due to Sonya Smith Wright's causing the will to be made and benefitting from it.

Ms. Wright, meanwhile, proposed different special instructions:

       (7) Once a confidential relationship has been proven, a rebuttable presumption of undue influence will arise when the confidential relationship is followed by a transaction in which the dominant party receives a benefit from the other party. At this point, the burden shifts to the dominant party to prove the fairness of the transaction by clear and convincing evidence.

       (8) [Mr. Bailey] has alleged that Vondie Smith's Will was invalidated by the undue influence of Ms. Wright. To overcome the presumption that Vondie Smith's Will was *not* the product of undue influence, [Mr. Bailey] must first show that Ms. Wright was in a confidential relationship with Vondie Smith. If the existence of a confidential relationship between Ms. Wright and Vondie Smith is shown to exist, and if it is also proved by [Mr. Bailey] that Ms. Wright was active in causing Vondie Smith's Will to be made and that she obtained a benefit from . . . Vondie Smith's Will, a rebuttable presumption would arise that the Will was the product of undue influence.

(Citations omitted). While the parties' proposed instructions share some similarities, Ms. Wright's proposed instructions include an additional requirement that Mr. Bailey must demonstrate that Ms. Wright was "active in causing Vondie Smith's Will to be made and that she obtained a benefit" to shift the burden of proof to Ms. Wright.

       Ms. Wright also proposed a special verdict form to the trial court prior to trial. This proposed verdict form was quite detailed. It included checkboxes that the jury could fill out that would shed light on their decision-making process for each of Mr. Bailey's substantive claims. Concerning his undue influence claim, Ms. Wright's proposed jury verdict form asked questions that the jury could answer with a "yes" or "no." These questions included whether Mr. Bailey proved "that Sonya Smith Wright was active in causing Vondie Smith to make the Will"; whether Mr. Bailey proved "that Sonya Smith Wright obtained a benefit from the Decedent's Will"; and, if Ms. Wright ultimately bore the burden of proof at trial, whether "Sonya Smith Wright [has] proven, by clear and convincing evidence, that Vondie Smith's Will was made according to Vondie Smith's free will, and not as a result of any undue influence." The trial court declined to utilize this proposed jury verdict form.

The parties proceeded to trial. The trial took place over almost two weeks and featured testimony from over two dozen witnesses. During the course of trial, the parties' proof was subject to multiple evidentiary objections, resulting in the issuance of numerous evidentiary rulings, including two that are relevant to this appeal.

First, the trial court ruled that Mr. Bailey could not mention the existence of a prior undue influence case involving Ms. Wright. Mr. Bailey sought to inform the jury that a different court had previously entered a judgment against Ms. Wright based on proof that she unduly influenced another one of her elderly family members, Marguerite H. Grandstaff, and that the facts of the Grandstaff case were, in his view, remarkably similar to the circumstances of this case. The trial court agreed with Ms. Wright that this evidence ran afoul of Tennessee Rules of Evidence 403 and 404(b), stating that the facts of the Grandstaff case are "too far attenuated from the facts of this particular case" and that the "probative value" of the evidence concerning Ms. Wright's prior judgment was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

Second, the trial court ruled, over Mr. Bailey's objection, that Ms. Wright could share a series of voicemails with the jury that she and Ms. Smith exchanged between 2016 and 2017. Mr. Bailey argued that these voicemails had not been produced during discovery and urged the trial court to exclude them as untimely. Ms. Wright responded that she had only discovered these voicemails on the eve of trial "on an old phone" that she had not turned on for some time. The trial court took Ms. Wright's counsel at his word, credited his representation that they did not discover these missing voicemails until shortly before trial, and found that the late detection of these messages created a substantial justification for not disclosing them during discovery.

In addressing preliminary matters with the court before trial, the parties reiterated their positions concerning whether the burden of proof for Mr. Bailey's undue influence claim shifted to Ms. Wright. After hearing renewed arguments from the parties but before hearing trial testimony, the trial court shifted course, deciding that it would make a determination as to the confidential relationship, but leave the burden-shifting question to the jury:

> As I've read the cases, when it's an attorney/client relationship . . . the Court [is] looking at whether there was a confidential relationship, that appears to be something that the Courts require the judge to make a finding on, that it would not be up to the jury to make that determination.
>
> . . .
>
> I have – I had thought I was going to let the jury make that call, but

I'm afraid if I do that, I'm setting myself up for – I'm giving [Mr. Bailey's attorney] almost a trump card to play if he has to go up on appeal. Because if he loses this case and goes up and says, you know what, the judge had to make that determination, not the jury. And since the judge . . . did not make it, we're going to have a new trial. I certainly don't want to do that again. I'm sure you all don't either.

And so, that's why once I made that finding, I feel like it was an attorney/client [relationship], then it seems like I have to follow up that that did create that confidential relationship. And that is where I've drawn the line. I'm not going to instruct the jury as [Mr. Bailey] wants me to do, . . . that then goes to undue influence of a presumption, I'm not going to do that.

Once the parties finished presenting their proof, the trial court proceeded to the jury instruction phase. Mr. Bailey raised concern with the trial court about how his lack of capacity claim intersected with his undue influence claim, asking the trial court not to instruct the jury that Ms. Smith had sound capacity at the time she entered her attorney-client relationship with Ms. Wright. Mr. Bailey worried that talking about Ms. Smith's capacity at that time might cause confusion and lead jurors to conflate the question of Ms. Smith's capacity in September 2016 with the question of whether she had adequate mental capacity in February 2017 when she executed the new will. The trial court disagreed.

Concerning the burden-shifting component of Mr. Bailey's undue influence claim, the trial court gave the jury the following instructions:

A confidential relationship exists whenever the trust and confidence of one person is placed in the honesty and faithfulness of another. The Court has found that Sonya Wright had an attorney-client relationship with Vondie Smith because of her involvement in the preparation of Mrs. Smith's will. Accordingly, there was a confidential relationship because of the legal status of Mrs. Smith and Mrs. Wright; however, a confidential relationship by itself, does not prove undue influence.

There is a presumption that the will was obtained by the undue influence of Sonya Wright *if you find*:

1. That Mrs. Wright was active in making the will to be procured and executed, and that she benefited from it.

This presumption may be overcome if Mrs. Wright proves by clear and convincing evidence that the making of the will was not the result of undue influence.

(Emphasis added.) On their face, these instructions asked the jury to decide whether a presumption of undue influence arose and, by extension, whether the burden of proof shifted from Mr. Bailey to Ms. Wright. These instructions further indicated that the jury's determination on those questions needed to be guided by their assessment of whether Ms. Wright "was active in making the will to be procured and executed" and whether "she benefited from it."

However, the trial court then gave the jury a verdict form that indicated the burden of proof had not shifted to Ms. Wright. Specifically, the jury verdict form asked and stated the following:

> 2. Do you find that the last will and testament of Vondi[e] Lee Smith is invalid as the result of the undue influence of Defendant Sonya Smith Wright? (Plaintiff, Ralph Ray Bailey has the burden of proof by a preponderance of the evidence)

The jury returned verdicts in favor of Ms. Wright on both of Mr. Bailey's claims. Specifically, the jury checked "no" on the question presented above as well as the question of "Do you find that the last will and testament . . . was invalid as a result of Vondi[e] Lee Smith being of unsound mind at the time she executed the will?" Asserting that the jury instructions, which diverged from those Mr. Bailey had sought, caused error, Mr. Bailey moved for a new trial, but the trial court denied his motion.

Mr. Bailey appeals, raising five issues. He sets forth those issues as follows:

1. Whether the trial court should have ruled that a legal presumption arose that the Will of Vondie Smith was obtained by Appellee's undue influence, thereby shifting the burden of proof to Appellee to prove the fairness of the transaction by clear and convincing evidence, and, subsequently, whether the trial court incorrectly instructed the jury as to the law on the presumption of undue influence.[5]

2. Whether, if the presumption had been properly found by the trial court, based on the proof at summary judgment and at trial, the trial court should have ruled that the presumption could not have been overcome by Appellee by clear and convincing evidence.

---

[5] Regarding this alleged error by the trial court, Mr. Bailey devotes separate sections of his brief to the trial court's decision-making at the summary judgment stage and the trial court's decision-making during trial. When the court asked Mr. Bailey's counsel at oral argument about whether this constituted "two different issues, then, or one issue," his response was that his client's argument "really all folds into the instruction." Given counsel's clarification, we will consider Mr. Bailey's arguments about the undue influence presumption within the context of the trial court's jury instructions without separately addressing the parties' cross-motions for summary judgment.

3. Whether the trial court should not have charged the jury that Vondie Smith had "capacity" at the time an attorney-client relationship was formed with Appellee Sonya Wright.

4. Whether the trial court should have excluded prejudicial evidence, in the form of voicemails, on the eve of trial that Appellee, an attorney, had purposely failed to disclose in discovery.

5. Whether the trial court should have admitted evidence that Appellee, an attorney, had also substantially altered the will of her other great-aunt, Marguerite Grandstaff, which will benefitted Appellee and her family, resulting in a will contest where a jury found that Appellee had unduly influenced Ms. Grandstaff and found the will invalid.

## II.

We begin at the heart of the parties' dispute by addressing the trial court's jury instructions on the presumption of undue influence and the burden of proof. "Whether a jury has been properly instructed presents a question of law that we review de novo with no presumption of correctness." *Borne v. Celadon Trucking Servs., Inc.*, 532 S.W.3d 274, 297 (Tenn. 2017); *Nye v. Bayer Cropscience, Inc.*, 347 S.W.3d 686, 699 (Tenn. 2011).

As the Tennessee Supreme Court has explained,

The legitimacy of a jury's verdict is dependent on the accuracy of the trial court's instructions, which are the sole source of the legal principles required for the jury's deliberations. Therefore, a trial court is under a duty to impart "substantially accurate instructions concerning the law applicable to the matters at issue." *Hensley v. CSX Transp., Inc.*, 310 S.W.3d 824, 833 (Tenn. Ct. App. 2009) (quoting *Bara v. Clarksville Mem'l Health Sys., Inc.*, 104 S.W.3d 1, 3-4 (Tenn. Ct. App. 2002)). When considering whether a trial court committed prejudicial error in a jury instruction, it is our duty to review the charge in its entirety and consider it as a whole, and the instruction will not be invalidated if it "*fairly* defines the legal issues involved in the case *and does not mislead the jury*." *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992). The judgment of a trial court will not be set aside based on an erroneous jury instruction unless it appears that the erroneous instruction more probably than not affected the judgment of the jury. Tenn. R. App. P. 36(b); *Gorman v. Earhart*, 876 S.W.2d 832, 836 (Tenn. 1994).

*Nye*, 347 S.W.3d at 699 (emphasis added).

- 9 -

When assessing the contents of a trial court's jury instructions, we do not apply a highly technical lens. *Borne*, 532 S.W.3d at 297. Instead, "Appellate courts review the entire charge just [as] a jury would, rather than through the practiced eye of a judge or lawyer." *Id.* (quoting *Ingram v. Earthman*, 993 S.W.2d 611, 635-36 (Tenn. Ct. App. 1998), *abrogated on other grounds as recognized in Redwing v. Catholic Diocese of Memphis*, 363 S.W.3d 436, 461 n.25 (Tenn. 2012)). Of course, juries use the instructions given to them to complete verdict forms. Thus, "we may consider the jury instructions in conjunction with the verdict form in determining whether the issues were presented to the jury 'in a clear and fair manner.'"[6] *Payne v. CSX Transp., Inc.*, 467 S.W.3d 413, 448 (Tenn. 2015) (quoting *Hickson Corp. v. Norfolk S. Ry.*, 260 F.3d 559, 568 (6th Cir. 2001)).

Here, Mr. Bailey's arguments concerning the trial court's jury instructions take multiple forms, including a series of arguments about the substantive legal principles underpinning this type of claim. First, Mr. Bailey contends that the trial court fundamentally misunderstood how the burden-shifting analysis works in undue influence cases that feature an attorney-client relationship. In his view, the Tennessee Supreme Court articulated a clear rule in *Matlock v. Simpson*, 902 S.W.2d 384 (Tenn. 1995), concerning when the burden of proof shifts from the plaintiff to the defendant in an undue influence case. *See Matlock*, 902 S.W.2d at 385 ("Tennessee cases have consistently held that the *existence* of a confidential or fiduciary relationship, together with a transaction by which the dominant party obtains a benefit from the other party, gives rise to a presumption of undue influence that may be rebutted."). Relying on that rule, Mr. Bailey asserts that because the trial court had already determined that Ms. Smith enjoyed an attorney-client relationship with Ms. Wright, which is a confidential relationship, and because Ms. Smith devised a substantial portion of her estate to Ms. Wright, the trial court clearly should have told the jury that Ms. Wright bore the burden of proof at trial. *See id.*

Second, Mr. Bailey asserts that the very existence of the rule from *Matlock* made the jury instructions inaccurate on their face, at least in the context of an undue influence case involving an attorney-client relationship. As Mr. Bailey sees the law, *Matlock* creates a straightforward equation: a confidential relationship plus a beneficial transaction equals a shifted burden. That formulation, he argues, does not include an additional component that required him to prove that Ms. Wright "was active in causing the will to be made" because that finding would be implicitly wrapped into the trial court's prior finding that Ms. Smith asked Ms. Wright, as her attorney, to effectuate her desired changes. Third, Mr. Bailey argues in the alternative that, even if the "active" language was appropriately

---

[6] Accordingly, we disagree with Ms. Wright's suggestion at oral argument that Mr. Bailey needed to separately object to the phrasing of the jury verdict form to present an argument in this court that the verdict from, when viewed alongside the court's instructions, misled the jury. Moreover, even if we set aside the general principle that the jury verdict form can help inform our review of a challenge to allegedly erroneous jury instructions, Mr. Bailey consistently objected to the trial court's decision to not assign Ms. Wright the burden of proof. Clearly, the phrasing of the jury verdict form falls within the scope of that reoccurring objection and his frequently reiterated argument.

- 10 -

included in the jury instructions, Ms. Wright took an active role by ensuring that a revised copy of Ms. Smith's will returned to her for later execution.

Ms. Wright presents several different counterarguments to these substantive objections. First, regarding *Matlock* generally, Ms. Wright asserts that the Tennessee appellate courts have issued subsequent opinions clarifying how the burden-shifting analysis ought to work in undue influence cases. *See, e.g., Childress v. Currie*, 74 S.W.3d 324, 329 (Tenn. 2002) (clarifying how the *Matlock* rule applies in the context of "an unexercised power of attorney"). Second and relatedly, Ms. Wright asserts that the specific language concerning whether the defendant was "active in causing the will to be made" has been endorsed by the Tennessee Court of Appeals as recently as 2017. *See In re Est. of Link*, 542 S.W.3d 438, 460 (Tenn. Ct. App. 2017) (stating in a case that did not involve an attorney-client relationship that "[r]equiring the party contesting a will to show that the proponent was 'active in causing the will to be made' in order to create a presumption of undue influence is a substantially accurate statement of the law"). Third, Ms. Wright asserts that an individual cannot be considered an "active" participant in the creation of a will without having been involved in both the drafting of the will and the execution of the will.

Mr. Bailey's arguments about the jury instructions are not cabined to the substantive law of wills. He also points out that the trial court's jury verdict form was inconsistent with its instructions to the jury on the critical question of whether the presumption of undue influence arose in the first place. On the one hand, the trial court made clear in its written instructions that it left it up to the jury to flip the burden of proof to Ms. Wright "*if you find*" that Mr. Bailey proved certain facts by a preponderance of the evidence, i.e. that Ms. Wright was active in creating the will and benefited from its execution. However, on the other hand, the trial court gave the jury a verdict form that purported to answer that exact question, stating, "Plaintiff, Ralph Ray Bailey has the burden of proof by a preponderance of the evidence." Taken together, Mr. Bailey asserts these two documents demonstrate the existence of "clear legal error and, given that the burden of proof of the parties was at stake, would have affected the outcome of this case and the jury's verdict." Ms. Wright devotes far less of her argument on appeal to this point, writing simply that "[g]iven the wording of the verdict form, the jury may well have agreed with Mr. Bailey that a presumption of undue influence arose in this case, but that this presumption was rebutted by Ms. Wright."

We turn first to the parties' substantive disagreement. The parties have presented conflicting views about the status of the substantive law in this area and whether the jury instructions adequately communicated the current state of the law to the jury. However, the parties' purported disagreement is not as sharp as the parties urge. Mr. Bailey is correct that *Matlock*, among other Tennessee cases, articulates the rule that "Tennessee cases have consistently held that the *existence* of a confidential or fiduciary relationship, together with a transaction by which the dominant party obtains a benefit from the other party, gives rise to a presumption of undue influence that may be rebutted." *See Matlock*, 902 S.W.2d at

- 11 -

385 (emphasis in original). However, in *In re Estate of Link*, 542 S.W.3d 438, 460 (Tenn. Ct. App. 2017), this court explained that the *Matlock* articulation of the rule is not at odds with a requirement that the proponent was "active in causing the will to be made" or "must have played a role in causing the will to be made." This court explained:

> Requiring the party contesting a will to show that the proponent was "active in causing the will to be made" in order to create a presumption of undue influence is a substantially accurate statement of the law. As we explained above, undue influence, at its core, contemplates some coercive conduct aimed at destroying the testator's free agency to such an extent that the stronger will of the proponent overcomes the will of the testator. *Keasler [v. Est. of Keasler]*, 973 S.W.2d [213,] 220 [(Tenn. Ct. App. 1997)]. It is therefore obvious that the proponent must have played a role in causing the will to be made in order for a presumption that they procured it through undue influence to arise. Were that not the case, undue influence would be presumed anytime a testator devised property to a person with whom they shared a confidential relationship, even when it was undisputed that the dominant party was not involved in causing the will to be made. Such a rule would defy logic and undermine the core definition of undue influence.

*In re Est. of Link*, 542 S.W.3d at 460. Thus the parties' articulations of the substantive law are not contrary, but rather may be harmonized in relation to the principles underlying undue influence, as explained by this court in *In re Estate of Link*. We need not, however, definitively resolve the parties' dispute on this point because even if Mr. Bailey is wrong, his argument of error is ultimately persuasive.

Assuming for purposes of argument that an active role is required, Ms. Wright's contention that her role was not active or that she did not play an active role is unavailing. At oral argument, Ms. Wright insisted that an attorney can only be "active" or "play a role" in this context if she is involved at both the drafting phase and the execution phase. This assertion is puzzling. Ms. Wright's reasoning would lend itself to the idea that an attorney hoping to procure a financial benefit from her client through undue influence would not bear the burden, notwithstanding her exertion of dominion and control over the testator while drafting the will, so long as she made sure to be conveniently absent at the time of execution. That strikes against the very reason that undue influence exists as a ground to contest the validity of a will in the first place and is contrary to the explanation of the substantive law in both *Matlock* and *In re Estate of Link*. *See Matlock*, 902 S.W.2d at 385; *In re Est. of Link*, 542 S.W.3d at 460.

Ms. Wright's brief appears to cite *Childress*, 74 S.W.3d at 329, to support the proposition that Ms. Wright could not have been "active" in bringing about the will if she was not involved in the will execution. *Childress*, however, does not bear that weight. In *Childress*, the beneficiary of a will was unaware at the time the will was executed that she

had been granted an unrestricted power of attorney in the will. *Id.* at 325. Under these circumstances, where the beneficiary was wholly unaware that she was attorney-in-fact, the Tennessee Supreme Court concluded that no confidential relationship arose that would impact a presumption of undue influence. *Id.*

The facts of the present case are not similar. Ms. Wright, while not present at the execution, nonetheless had a conscious and active role in the creation of the will at issue, a will which benefited her. Not only did Ms. Wright, acting as an attorney, receive a typed will with handwritten notes from the testator and give those notes to her legal assistant to type up a revised will, she also added provisions to the will that did not appear in the handwritten notes, including a no-contest clause, which is of benefit to Ms. Wright. These facts are far removed from *Childress* and, as a matter of law, such facts are sufficient to establish Ms. Wright was "active in causing" or "play[ed] a role in" the making of the will, regardless of her absence at execution. Ms. Wright's counsel cited no additional authority either in briefing or during oral argument supporting the proposition that "active" in this context means that the attorney must have shepherded the will from its drafting through its execution, and we find this line of argument unconvincing.

Additionally, irrespective of resolution of the above discussed substantive disagreement, Mr. Bailey is also able to demonstrate error through the jury instructions, which laid the burden of proof on Mr. Bailey and instructed the jury that the burden had not flipped in this case. In its written instructions, the trial court gave the jury a roadmap for deciding how to the allocate the burden of proof. Specifically, it stated that the jury needed to shift the burden of proof to Ms. Wright "*if you find*" that Mr. Bailey proved that she was "active in making the will to be procured and executed, and that she benefited from it." A reasonable person reading that language would understand that the trial court expected him or her to make factual determinations about several important issues and then use those determinations to answer the critical question of whether Ms. Wright ever assumed the burden of proof. *See Borne*, 532 S.W.3d at 297.

However, the trial court then gave that same reasonable reader a verdict form to complete that stated in no uncertain terms that "Plaintiff, Ralph Ray Bailey has the burden of proof by a preponderance of the evidence" on his undue influence claim. The trial court's jury verdict form effectively foreclosed the burden-shifting question. We recognize that the trial court may not have intended to communicate to the jury that there was a "correct" answer to the question of who bore the burden of proof. In fact, the transcribed remarks from the trial court from the outset of trial suggest that it was trying to be careful and give fair guidance to the jury. However, our role is to assess the message that it actually communicated to the jury from the perspective of the "jury . . ., rather than through the practiced eye of a judge or lawyer." *See id.* (quoting *Ingram*, 993 S.W.2d at 635-36). Here, the trial court instructed the jury to consider whether the burden flipped to Ms. Wright at the same time as it told the jury that the burden did not flip to Ms. Wright. These conflicting instructions did not "fairly define[] the legal issues involved in the case" in a

- 13 -

helpful manner for the jury. *See Nye*, 347 S.W.3d at 699 (quoting *Otis*, 850 S.W.2d at 446).

These conflicting instructions "more probably than not affected the judgment of the jury." *See id.* Again, while we recognize that this might have been an entirely unintentional error on the part of the trial court, its intentions are not relevant to this inquiry. Even if it did so unwittingly, the trial court's instructions indicated that Mr. Bailey's proof was insufficient, significantly undermining any trust that the jury independently arrived at its verdict in favor of Ms. Wright on Mr. Bailey's undue influence claim. Relatedly, "[A]ppellate courts begin with a presumption that juries are honest and conscientious and they have followed the instructions given to them." *Duran v. Hyundai Motor Am., Inc.*, 271 S.W.3d 178, 212 (Tenn. Ct. App. 2008). While Ms. Wright believes that it is possible that the jury "agreed with Mr. Bailey that a presumption of undue influence arose in this case, but that this presumption was rebutted by Ms. Wright," we find that position implausible. The trial court plainly told the jury that "Plaintiff, Ralph Ray Bailey has the burden of proof," and Ms. Wright has not supplied this court with any "objective basis" in this record "for concluding that the jury did not follow the trial court's instructions" with respect to the fact that Mr. Bailey, according to the verdict form, bore the burden of proof. *See id.* The jury was instructed to determine whether Mr. Bailey established by a preponderance of the evidence that there was undue influence, rather than being instructed to determine whether Ms. Wright proved, by clear and convincing evidence, that there was no undue influence.

The trial court's errant instructions require a retrial on Mr. Bailey's undue influence claim, so we vacate that portion of the judgment below. *See Nye*, 347 S.W.3d at 699 (explaining that a judgment rendered "based on an erroneous jury instruction" should be set aside if "the erroneous instruction more probably than not affected the judgment of the jury").

Insofar as Mr. Bailey suggests that this court on appeal should simply decide that Ms. Wright cannot overcome the presumption that the will was a product of undue influence, we decline to do so. Resolution of whether Ms. Wright can overcome that presumption is mired in sharply contested factually intensive considerations that are, applying the appropriate standard, for resolution first by the jury, not an appellate court.

III.

Mr. Bailey also contends that the trial court erred in instructing the jury that Ms. Smith had the necessary mental capacity to enter an attorney-client relationship in September 2016. As noted in the previous section, jury instructions "will not be invalidated" unless they unfairly articulate the legal issues involved in the case, mislead the jury, and "more probably than not affected the judgment of the jury." *Id.* (citing Gorman v. Earhart, 876 S.W.2d 832, 836 (Tenn.1994)).

- 14 -

As Mr. Bailey understands it, the trial court's capacity instruction with respect to the formation of the attorney-client relationship undermined his alternative lack of capacity claim by "effectively [taking] away the determinative issue of capacity from the jury, despite extensive expert proof presented at trial and despite [there] being no basis in law for this ruling." We respectfully disagree. Where a will contestant asserts that the testator lacked the requisite mental capacity to execute a new will, "the contestant has the burden of proving a lack of testamentary capacity *at the time the will was executed.*" *In re Est. of Price*, 273 S.W.3d 113, 133 (Tenn. Ct. App. 2008) (emphasis added). The trial court here instructed the jury accordingly, and those instructions constituted an accurate statement of Tennessee law. We do not agree with Mr. Bailey that instructing the jury that Ms. Smith was of sound mind when she created an attorney-client relationship with Ms. Wright in September 2016 "effectively took away" his claim that Ms. Smith's capacity had deteriorated to a such a degree that she lacked testamentary capacity to execute a new will in February 2017. Plainly, those are two distinct considerations. While "evidence of the testator's mental and physical condition both before and after the execution of the will, within reasonable limits, is admissible to prove the testator's condition at the time the will was signed," the jury's ultimate question when considering a lack of capacity claim is whether the testator had "testamentary capacity [at] the time of execution of the will." *Id.* (quoting *In re Est. of Bean*, No. M2003-02029-COA-R3-CV, 2005 WL 3262936, at *5 (Tenn. Ct. App. Dec. 1, 2005)).

Here, the jury was instructed to assess Ms. Smith's capacity at that time of execution to determine whether to find in favor of Mr. Bailey on his alternative claim. The jury heard evidence regarding Ms. Smith's capacity at the time the attorney-client relationship was created, of her subsequent injuries, and her capacity at the time of the execution of the will. We trust the jury made the appropriate distinction in accordance with the trial court's instructions. *See Duran*, 271 S.W.3d at 212 ("[A]ppellate courts begin with a presumption that juries are honest and conscientious and they have followed the instructions given to them."). Accordingly, we affirm the jury's verdict with respect to Mr. Bailey's lack of testamentary capacity claim and limit the scope of the parties' retrial solely to Mr. Bailey's undue influence claim.

IV.

In addition, Mr. Bailey also asks us to consider whether the trial court erred in excluding his proof about the Grandstaff case and admitting Ms. Wright's proof about Ms. Smith's voicemails. Trial courts have "wide latitude" to control the introduction of evidence at trial. *Caldwell v. Ruby Falls, LLC*, 674 S.W.3d 899, 908 (Tenn. Ct. App. 2023) (quoting *McGarity v. Jerrolds*, 429 S.W.3d 562, 566 (Tenn. Ct. App. 2013)). Accordingly, this court reviews a trial court's evidentiary decisions only for abuses of discretion. *Id.* An abuse of discretion occurs in this context when the trial court makes a decision without "a sufficient evidentiary foundation," without identifying and applying the appropriate legal

principles, or reaches a result that falls outside "the range of acceptable alternatives." *Id.* (quoting *McGarity*, 429 S.W.3d at 566); *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

A.

First, concerning the proof from the Grandstaff case, Mr. Bailey asserts that the trial court erred in applying Tennessee Rules of Evidence 403 and 404(b) to prevent him from mentioning details about a prior undue influence case that resulted in a judgment being entered against Ms. Wright. Mr. Bailey contends that this evidence would have established that Ms. Wright, acting as a licensed Tennessee attorney, "also substantially altered the will of her other great-aunt, Marguerite Grandstaff, which . . . benefitted [Ms. Wright] and her family, resulting in a will contest where a jury found that Appellee had unduly influenced Ms. Grandstaff and found that said will was invalid." The trial court concluded that the Grandstaff evidence was "too far attenuated from the facts of this particular case" and that the "probative value" of the evidence concerning Ms. Wright's prior judgment "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Pretermitting the issue of the trial court's ruling under Tennessee Rule of Evidence 404(b),[7] we conclude that the trial court's reliance on Tennessee Rule of Civil Procedure 403 to exclude the Grandstaff evidence survives discretionary review.

We begin by assessing whether the trial court had "a sufficient evidentiary foundation" to guide its decision-making. *See Caldwell*, 674 S.W.3d at 908. Ms. Wright asserts that Mr. Bailey "makes [his] argument" on the exclusion of the Grandstaff evidence "with no citations to the record or Orders from the Grandstaff case" for this court to consider. That is only partially accurate, however, as Mr. Bailey's principal brief does cite the portion of the record wherein he provided the trial court with important background

---

[7] The Tennessee Supreme Court has indicated that the word "person" in Tennessee Rule of Evidence 404(b) is limited to criminal defendants. *See, e.g., State v. Moon*, 644 S.W.3d 72, 82 (Tenn. 2022) (citing *State v. Stevens*, 78 S.W.3d 817, 837 (Tenn. 2002)); *Hall v. Stewart*, No. W2005-02948-COA-R3-CV, 2007 WL 258406, at *11-12 (Tenn. Ct. App. Jan. 31, 2007) (differentiating between criminal cases and civil cases by noting that the latter "requires the application of Rules 401 and 403" rather than Rule 404(b)). The Sixth Edition of Tennessee Law of Evidence states that "proof of [prior bad] acts of people other than the criminal accused *or of people in a civil case* . . . are to be assessed under the more liberal standards of Rule 401 rather than Rule 404(b)." Neil P. Cohen, Sarah Y. Sheppeard & Donald F. Paine, Tennessee Law of Evidence § 4.04[7][a] (LexisNexis Matthew Bender 2011) (emphasis added); *but see, e.g., Ellis v. Modi*, No. M2019-01161-COA-R3-CV, 2020 WL 2316649, at *6 (Tenn. Ct. App. May 11, 2020) (analyzing Tennessee Rule of Evidence 404(b) in a civil case after *Stevens*); *Steppach v. Thomas*, 346 S.W.3d 488, 520 (Tenn. Ct. App. 2011) (same). Neither party has articulated any arguments concerning the applicability of Rule 404(b) in civil cases. *See Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her."). Because the trial court's ruling under Rule 403 is sufficient to affirm its exclusion of the Grandstaff evidence, we decline to address any civil-criminal distinction concerning Rule 404(b) here.

about the Grandstaff case and argued in favor of sharing details about it with the jury. Mr. Bailey's brief refers to a substantial explanation that he provided in the trial court concerning the history of the Grandstaff case, Ms. Wright's involvement, and an explanation of how those facts mattered for the purposes of deciding the outcome of Ms. Wright's objections. The record demonstrates that the trial court did have enough information to make an assessment regarding the admissibility of details about the Grandstaff case.

Next, we consider whether the trial court identified the correct legal principles to guide its decision-making. Tennessee Rule of Evidence 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The trial court's order concerning the Grandstaff evidence identified this rule and purported to apply it. Specifically, the trial court determined that that the "probative value" of the Grandstaff evidence "is substantially outweighed by the danger of unfair prejudice." That framework of analysis is in accord with the plain text of Rule 403.

Accordingly, the question becomes whether the trial court's evidentiary decision fell within the range of acceptable outcomes. *See Caldwell*, 674 S.W.3d at 908 (evidentiary determinations are reviewed for abuse of discretion). Though not framed in that manner, Mr. Bailey's argument on appeal constitutes a challenge to the soundness of the trial court's final decision. Mr. Bailey does not, however, develop an attack on the trial court's conclusion that the danger of unfair prejudice in introducing evidence from the Grandstaff case outweighs that evidence's probative value, which is a ruling that satisfies the requirements of Rule 403. In the absence of an argument to the contrary, we struggle to discern how the trial court's conclusion that this evidence presented a danger of unfair prejudice to Ms. Wright falls outside the range of acceptable outcomes. *See id*. While perhaps our analysis or even our decision concerning whether to admit the evidence from the Grandstaff case might have differed from the trial court, we are not permitted "to second-guess the court below, or to substitute [our] discretion for the lower court's" in this posture. *See Jernigan v. Paasche*, 637 S.W.3d 746, 752 (Tenn. Ct. App. 2021) (quoting *Lee Med., Inc.*, 312 S.W.3d at 524). Instead, our sole task is to assess whether Mr. Bailey met his burden of demonstrating that the trial court abused its discretion. *See id.* ("[I]f the reviewing court determines that 'reasonable minds can disagree with the propriety of the decision,' the decision should be affirmed." (quoting *State v. McCaleb*, 582 S.W.3d 179, 186 (Tenn. 2019))); *Caldwell*, 674 S.W.3d at 908. He has not done so. Accordingly, we find no error in the trial court's decision to exclude the evidence that Mr. Bailey sought to introduce about Ms. Wright in relation to the Grandstaff case.

## B.

Second, concerning the proof of Ms. Wright's voicemails, Mr. Bailey asserts that

the trial court erred in allowing these voicemails to be heard by the jury. According to Mr. Bailey, these voicemails should have been disclosed in response to pertinent discovery requests. Consequently, Mr. Bailey asserts that he "was forced to conduct discovery type questions in [his] questioning of [Ms. Wright] at trial."

Regarding this objection, it is important to distinguish between Mr. Bailey's undue influence claim and his lack of capacity claim. Insofar as this issue applies to Mr. Bailey's undue influence claim, his timeliness objection is stale at this point. We have ordered a retrial of his undue influence claim, and because Mr. Bailey will have had access to these voicemails for quite some time before the retrial, we anticipate he will have ample opportunity on remand to present the trial court with any additional substantive objections he might have to the introduction of these voicemails in the second trial. We leave any arguments that Mr. Bailey might make regarding the admissibility of these voicemails for the trial court to opine upon in the first instance.

Insofar as Mr. Bailey's objection to the trial court's ruling touches upon his alternative lack of capacity claim, which is not being retried, we conclude that the trial court did not abuse its discretion in such a manner that would undermine the jury's lack of testamentary capacity verdict. Assuming for the sake of argument that Mr. Bailey is right insofar as he asserts that the voicemails were covered by his discovery requests, Tennessee Rule of Civil Procedure 37.03 allows a trial court to admit materials "to use as evidence at trial" in spite of a party's late disclosure if the late-disclosing party provides a "substantial justification" for the late disclosure or if the late disclosure "is harmless." The trial court identified that standard and used it to guide its decision-making. *See Caldwell*, 674 S.W.3d at 908 (citing *McGarity*, 429 S.W.3d at 566). Moreover, Ms. Wright's counsel represented to the trial court a total lack of awareness of the existence of these voicemails until Ms. Wright turned on an "old phone" that had not been previously turned on for some time, providing a basis for the trial court's decision. *See id.* Ultimately, the trial court credited Ms. Wright's counsel's representation and concluded it constituted a "substantial justification" for the late disclosure of the voicemails. *See* Tenn. R. Civ. P. 37.03(1). While Mr. Bailey believes the outcome of his objection should have resulted in a contrary conclusion, the trial court's decision does not constitute an abuse of discretion. *See Caldwell*, 674 S.W.3d at 908. Again, it is not our role to second guess the trial court's ultimate decision to credit Ms. Wright's excuse, and the court's conclusion that there was "substantial justification" for the tardiness is within the range of acceptable alternatives. *See Jernigan*, 637 S.W.3d at 753. Accordingly, we conclude that the trial court did not abuse its discretion in admitting the voicemails into evidence during the first trial.

V.

For the aforementioned reasons, we vacate in part and affirm in part the judgment of the Circuit Court for Wilson County. Costs of this appeal are taxed equally to the appellant, Ralph Ray Bailey, and the appellee, Sonya Smith Wright, for which execution

may issue if necessary. The case is remanded for further proceedings consistent with this opinion.

s/ Jeffrey Usman
JEFFREY USMAN, JUDGE